A09A1036. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA v. HOGAN.
(680 SE2d 518)

JOHNSON, Presiding Judge.

Brenda Hogan was the registrar at Fort Valley State University. After the President of the University fired her, she sought a hearing before an administrative law judge ("ALJ"), who upheld her termination. The Board of Regents of the University System of Georgia (the "Board") adopted the ALJ's decision. Hogan then sought certiorari review in the superior court, which reversed the ALJ's decision, overturned Hogan's termination, and awarded her monetary damages and attorney fees. The Board filed an application for discretionary review in this Court, which we granted. Because the superior court improperly substituted its judgment for that of the ALJ, we reverse.

1. The Board contends the superior court failed to apply the proper standard of review in determining that the Board's decision to terminate Hogan was arbitrary and capricious. We agree.

When a superior court reviews the decision of an administrative agency, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."[1] "The superior court's review of evidentiary issues is limited to determining whether factual findings are supported by 'any evidence.' "[2] We review the superior court's decision to determine "whether the superior court has, in its own final ruling, committed an error of law."[3] "On appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the initial decision of the local governing body or

---

[16] See *Albright*, supra at 205 (2).

[1] OCGA § 50-13-19 (h).

[2] (Citation omitted.) *Professional Standards Comm. v. Smith*, 257 Ga. App. 418 (571 SE2d 443) (2002).

[3] (Citation and punctuation omitted.) Id.

administrative agency."[4]

Viewed in light of the above standard of review, the record shows that Hogan was a "classified" employee, which meant — under the business procedures manual then used by the Board — that she could be fired whenever her supervisor determined that her performance of duty or personal conduct was unsatisfactory. The manual provided that classified employees would be informed in writing of the reasons for their termination and were entitled to appeal before a grievance committee.

As the registrar, Hogan was responsible for maintaining the university's official student records. The University's president, Dr. Kofi Lomotey, testified that it is "critically important" to have an efficiently-run registrar's office to retain students and effectively communicate with them. However, shortly after being hired, Lomotey began receiving complaints from students, parents, and alumni that the registrar's office was not responsive to them, failed to provide transcripts in a timely manner, and generally lacked professionalism. In addition, faculty members complained that grades were not posted in a timely manner. And staff in the registrar's office informed Lomotey that Hogan did not adequately know how to use the student information management system on the computer, did not know how to access the safe, and had not done an adequate job of staff development in the office. According to one registrar employee, "the office was in chaos." The general feeling was that "you couldn't get much out of the registrar's office, and that people were negative." These complaints were confirmed by Dr. Dorothy Conteh, the vice president of academic affairs, and an "enhancement team" that evaluated the effectiveness of management operations at the University.

Subsequently, Lomotey and Conteh decided to terminate Hogan. Reasons for this termination included inadequate supervision of staff, lack of communication in the office, low morale, lack of clarity on the responsibilities of the people in the office, inadequate staff training, and failure to know the University's student information management system. Conteh spoke with Hogan about the termination and sent her a termination letter. Hogan appealed to Lomotey and requested a grievance hearing, but Lomotey denied her appeal and informed her she could appeal to the Board. Lomotey did not give Hogan a grievance hearing because he had been directly involved in the case prior to Hogan's termination, knew the complaints about the registrar, and did not believe the grievance hearing

---

[4] (Citation and punctuation omitted.) *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997).

YALE LAW LIBRARY

would alter the opinion he had already formulated about the management of the registrar's office.

At Hogan's request, a hearing was held before an ALJ. The ALJ found that Hogan was an at-will employee who served at Lomotey's pleasure and could be fired if Lomotey became displeased with her performance. The ALJ determined that its review was "to determine whether [Hogan's] termination from employment was arbitrary and capricious." Because the ALJ concluded that Hogan's termination was not arbitrary and capricious, the ALJ upheld her termination.

The superior court then granted certiorari review. In granting review, the court found that Lomotey's failure to provide Hogan with a written reason for her termination or to grant her a grievance hearing provided "compelling evidence" that the termination was arbitrary and capricious. The court also noted that Lomotey and Conteh failed to investigate the causes of the problems in the registrar's office and never ascertained whether Hogan was responsible for the problems. The superior court, therefore, overturned the termination and awarded Hogan damages for lost wages, as well as attorney fees and expenses.

Rather than applying the "any evidence" standard of review, the superior court made an independent determination that Hogan's termination was "arbitrary and capricious and was not the meaningful hearing that due process requires." The superior court did not give any reasons for this determination in its order, but it must have accepted Hogan's arguments that the University failed to investigate the complaints about the registrar's office, failed to ascertain whether Hogan was responsible for the complaints, failed to tell Hogan why she was being fired, and failed to provide Hogan with a grievance procedure. Although these circumstances might weigh against the ALJ's finding, the superior court was obligated to affirm the ALJ's decision if there was "any evidence" to support it.[5] The court was not allowed to substitute its judgment for that of the ALJ.

"As factfinder, [the ALJ] had the exclusive prerogative of weighing evidence and determining the credibility of witnesses."[6] And here the evidence in the record supported the ALJ's decision that Hogan's termination was not arbitrary and capricious. The evidence showed that Hogan was responsible for overseeing the registrar's office and its operation, the office was in chaos, students, alumni, parents and faculty complained about the office, registrar staff employees complained about Hogan, Hogan did not know how to use the student information management system on the computer,

---

[5] See *City of Atlanta Govt.*, supra.

[6] (Citation omitted.) *Professional Standards Comm.*, supra at 420 (2).

and Hogan had not done an adequate job of staff development. These facts provided support for Lomotey to terminate Hogan, and the superior court was bound by this evidence to affirm the ALJ's decision.

Contrary to the superior court's order, we do not find persuasive Hogan's argument that her due process rights were violated when she was not given a reason for her termination or a grievance hearing. First of all, as the Board points out, and as the ALJ concluded, because Hogan could be terminated if her supervisor found her work to be "unsatisfactory," she was an at-will employee.[7] Thus, Hogan has no property interest in her job and, therefore, no viable constitutional due process claim.[8]

Furthermore, even if Hogan does have a due process claim, "the adequacy of due process is governed not by personnel manuals but by case law interpreting the federal and state constitutions, which only require that the employee (even if later) be notified and given an opportunity to be heard."[9] As long as the requirements of due process are met, the employer's failure to follow all the requirements in the manual does not even give rise to an action for breach of contract.[10] Here, it is undisputed that Hogan was later informed of the reasons for her termination and was given an opportunity to be heard before the ALJ. Additional proceedings at the institutional level would have been irrelevant since Lomotey had been involved in Hogan's termination from the beginning of the process, had final authority over any grievance review, and could either affirm or overrule the panel's decision. By appealing directly to the ALJ, Hogan was afforded a full and fair hearing, fulfilling the due process requirements.

The only determination at issue is whether any evidence supported the ALJ's conclusion that Hogan's termination was not arbitrary and capricious. "Viewed in a light most favorable to [the Board], the prevailing party before the [ALJ], and with every presumption in favor of the [ALJ's] decision indulged,"[11] there is ample evidence in the record to support this decision.[12] The superior court erred in substituting its judgment for that of the ALJ. Therefore, we reverse the trial court's judgment and affirm the

---

[7] See *Wallace v. Bd. of Regents &c. of Ga.*, 967 FSupp. 1287, 1293 (II) (A) (S.D. Ga. 1997) (construing same procedures manual at issue here).

[8] See id.

[9] *Norris v. Henry County*, 255 Ga. App. 718, 719-720 (1) (566 SE2d 428) (2002).

[10] Id. at 720 (1).

[11] (Punctuation and footnote omitted.) *City of Atlanta v. Harper*, 276 Ga. App. 460, 461 (623 SE2d 553) (2005).

[12] See *Glass v. City of Atlanta*, 293 Ga. App. 11, 14 (1) (666 SE2d 406) (2008) (even the presence of conflicting evidence and evidence which barely meets the any evidence standard is sufficient to support an ALJ's determination).

decision of the ALJ upholding Hogan's termination.

2. Based on our findings in Division 1, we need not reach the Board's remaining enumerations of error regarding damages and fees.

*Judgment reversed. Ellington and Mikell, JJ., concur.*

DECIDED JUNE 18, 2009.

*Thurbert E. Baker, Attorney General, Ann S. Brumbaugh, Rebecca S. Mick, Assistant Attorneys General*, for appellant.

*Hall, Bloch, Garland & Meyer, John E. Hall IV, John F. Kennedy*, for appellee.