## A10A1739. PROFESSIONAL STANDARDS COMMISSION v. ADAMS.

### (702 SE2d 675)

JOHNSON, Judge.

We granted the Professional Standards Commission's ("PSC") application for discretionary review of a superior court order reversing the revocation of Priscilla Adams' teaching certificate and remanding for imposition of a 90-day suspension. Because the superior court judge overstepped his authority in substituting its punishment for that imposed by the PSC, we must reverse.

The facts, as found by an administrative law judge ("ALJ"), show that on Friday, March 21, 2008, a 15-year-old Mundy's Mill High School female student and two Mundy's Mill High School male students had oral sex with each other. A video of those acts was recorded on a cell phone. On Monday, March 24, 2008, one of the boys brought the cell phone to school and showed the video to several students. At the time of the incident, Adams served as principal of Mundy's Mill High School. Assistant Principal Shakira Rice learned about the video and immediately informed Adams about it. Rice took

it upon herself to investigate and observe some of the video. Later that same day, she reported her findings to Adams, who took no action. Rice once again reminded Adams about the video on Tuesday, March 25, 2008, but again Adams did not ask any questions about the matter or provide any direction to Rice.

No action was taken until Thursday, March 27, when Adams called the female student's parents to school for a meeting. During the meeting, Rice showed the parents the video. Adams did not ask any questions about the video, did not view the video herself, and told the female student's parents that she had not seen the video. Adams also told the female student's parents that other students were taunting their daughter. After the meeting, Rice returned the cell phone to the male student. Adams did not question Rice about who had custody of the cell phone or ask whether it had been confiscated.

The female student's parents called Adams later the same day to inquire whether the boys would be disciplined and to ask if the cell phone had been confiscated. Adams' responded that she had not called the boys' parents and could only talk with her students about academics. Both the female student's parents and Adams contacted assistant superintendent Derek Manning about the incident.

Manning testified that he received conflicting information from the parents and Adams, so he conducted his own investigation. Manning directed Adams to look at the video, identify the students involved, and contact their parents, but Adams never did so. When Manning specifically asked Adams why she did not do anything about the video until three days after she learned about it, Adams replied, "I just didn't get around to it." Manning later learned that no one had confiscated the phone. He was "astonished" at Adams' behavior and thought her failure to confiscate the phone was "totally a lapse in judgment."

Adams admitted she had neither questioned nor guided Rice regarding the video. She further admitted she never saw the video and neither spoke with the two male students about the incident nor scheduled a meeting with their parents. She admitted that she did not contact the police, a school resource officer, or the Department of Family and Children Services about the situation. As a result of the video distribution and the taunting at school, the female student suffered nightmares, bedwetting, social regression, and ultimately was forced to change schools.

A detective who investigated the incident confiscated the cell phone. The video was played into evidence at Adams' administrative hearing. According to the detective, Adams was "absolutely pissed off" when he explained why he was at the school. Following the hearing, the ALJ determined, based on the evidence presented, that

Adams had violated Standard 10 of the Code of Ethics for Educators, which then provided:

> An educator should demonstrate conduct that follows generally recognized professional standards. Unethical conduct is any conduct that impairs the certificate holder's ability to function professionally in his or her employment position . . . or a pattern of behavior or conduct that is detrimental to the health, welfare, discipline, or morals of students.

Evidence supporting this conclusion included Adams' failure to investigate the video, her failure to contact students and parents promptly, and the fact that she misled both parents and her supervisors regarding her action. The ALJ also noted that Adams' demeanor during the hearing was "troubling":

> She appeared indifferent to the impact of the incident on the students, parents and teachers involved. She displayed no remorse or regret regarding her handling of the incident. Additionally, her testimony largely conflicted with that of the other witnesses and at times was untruthful.

The ALJ specifically found that Adams displayed a "grave absence of leadership and judgment" that "impaired her ability to function professionally in her employment position" since students, parents, and teachers were all aware of her failure to act. The ALJ further concluded that Adams' remarks that she would only address students' academic issues and refusal to take any action regarding the video recording "demonstrate[d] a callous indifference to her students' welfare." Because of Adams' actions or inactions, and "[c]oupled with her demeanor during the hearing," the ALJ found that Adams' teaching certificate should be suspended for "at least a year" and issued a one-year suspension. Adams appealed to the PSC.

Immediately following the incident, the PSC had recommended that Adams' teaching certificate be suspended for 90 days. However, after further investigation and review of the evidence presented at the administrative hearing, the PSC adopted the ALJ's findings and conclusions, but rejected the recommended sanction. Asserting that "the particular facts and circumstances as supported by the evidence in the record warrant a sanction greater than the [PSC's] original probable cause determination," the PSC decided to revoke Adams' educator's certificate.

Adams appealed the revocation to the superior court. Although the superior court did not disturb the PSC's determination that

Adams had violated Standard 10, it reversed the revocation of Adams' teaching certificate and remanded the case for "implementation of the [PSC's] original determination of a ninety day suspension of [Adams'] educator's certificate." According to the superior court, the PSC had arbitrarily and capriciously revoked Adams' certificate because she had chosen to appeal the initially proposed sanction. The superior court further noted that the PSC had failed to provide evidence as to what conduct in this situation would have followed generally recognized professional standards.

The PSC sought discretionary review of the trial court's order, arguing that the trial court improperly substituted its judgment for that of the administrative agency. We agree.

When reviewing an administrative decision, the superior court must defer to the agency's judgment regarding the weight of the evidence and affirm the administrative findings if supported by any evidence.[1] The superior court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."[2] Although the superior court may reverse or modify an "arbitrary or capricious" agency determination, a decision is arbitrary or capricious only if it lacks a rational basis.[3] When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the local governing body or administrative agency.[4]

Here, the superior court concluded that the evidence in the record supported the PSC's judgment that Adams violated Standard 10, but the superior court found that Adams' conduct was not sufficiently grievous to warrant the sanction imposed by the PSC. Ultimately, however, the PSC, as the state agency charged with authority to revoke, suspend, or deny a teaching certificate,[5] is responsible for determining the appropriate sanction for an ethics violation, and the available sanctions include revocation of the educator's teaching certificate. And the superior court is bound to uphold the PSC's judgment if there is any evidence to support it. The record in this case contains evidence supporting the PSC's sanction.

The PSC specifically adopted the ALJ's findings of fact and conclusions of law based on the full record. These conclusions included the following: Adams' failure over several days to view the

---

[1] See *Bd. of Regents &c. of Ga. v. Hogan*, 298 Ga. App. 454 (1) (680 SE2d 518) (2009).

[2] OCGA § 50-13-19 (h).

[3] OCGA § 50-13-19 (h); *Professional Standards Comm. v. Denham*, 252 Ga. App. 785, 786 (556 SE2d 920) (2001).

[4] See *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009); *Hogan*, supra.

[5] OCGA §§ 20-2-983; 20-2-984 (f).

video, confiscate the video, discipline the students who were circulating the video, or instruct students not to taunt the female student demonstrated a grave absence of leadership and judgment that impaired her ability to function professionally and demonstrated a callous indifference to student welfare. In addition, the PSC is required to give due regard to the ALJ's opportunity to observe witnesses,[6] and, here, the ALJ found that Adams' demeanor was troubling, that she displayed no remorse or regret for the way the situation was handled, and that her testimony was at times untruthful. Given these findings, a rational basis for revocation exists. "Because the PSC's decision [to revoke Adams' teaching certificate] has a rational basis, the superior court exceeded its authority in overturning it."[7]

The superior court, recognizing its standard of review in administrative agency cases, based its decision to reverse the PSC's sanction on the ground that the sanction was arbitrary and capricious because the sanction was much more stringent than the 90-day sanction first proposed by the PSC. According to the superior court, this increase in the severity of the sanction improperly punished Adams for exercising her appellate rights. The record, however, does not support the superior court's determination or demonstrate any type of retaliation.[8] Instead, the PSC rationally determined that Adams' conduct was more inappropriate and harmful than it originally believed, supporting a sanction greater than the PSC's original probable cause determination. And, under Georgia law, an agency may increase a sanction from that originally recommended as long as it makes clear its reasons for doing so, as the PSC did in this case.[9] It should be noted that the sanction imposed by the PSC was not contrary to the ALJ's recommendation of "at least" a one-year suspension.

Although the superior court upheld the PSC's finding that Adams violated Standard 10, it nonetheless stated in its order that the PSC had failed to include evidence in the record to show what conduct would have followed "generally recognized professional standards" in this situation. However, contrary to the superior court's language, the record only has to contain evidence "from which an adverse consequence on the student body can be inferred by the PSC, given the grave nature of the conduct itself."[10] "Such a conclusion accords with the public policy that school disciplinary

---

[6] OCGA § 50-13-41 (d).

[7] *Denham*, supra at 786-787.

[8] See *Hogan*, supra at 456 (1).

[9] See *Ga. Bd. of Dentistry v. Pence*, 223 Ga. App. 603, 606 (4) (478 SE2d 437) (1996).

[10] *Professional Standards Comm. v. Alberson*, 273 Ga. App. 1, 7 (1) (614 SE2d 132) (2005).

boards are to have broad discretion in the management of school affairs in order to ensure that school systems are able to secure the employ only of those fit to serve the public interest."[11] Since the record did contain evidence of an adverse consequence to the female student, as well as evidence about Adams' lack of leadership and unprofessional behavior, it supported the PSC's findings of fact, conclusions of law, and punishment. The record supports a conclusion that Adams violated Standard 10 by exhibiting behavior that "seriously impaired [her] ability to function professionally as an educator"[12] and that Adams' behavior warranted revocation of her educator's certificate. The superior court overstepped its authority in reversing the agency's sanction, and the superior court's order must therefore be reversed.

*Judgment reversed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED OCTOBER 5, 2010.

*Thurbert E. Baker, Attorney General, Ann S. Brumbaugh, Assistant Attorney General*, for appellant.

*Lawson & Thornton, George O. Lawson, Jr.*, for appellee.

---

[11] (Citation and punctuation omitted.) Id.

[12] *Professional Standards Comm. v. Valentine*, 269 Ga. App. 309, 313 (603 SE2d 792) (2004).