## A09A2258. THE LAMAR COMPANY LLC v. WHITEWAY NEON-AD.
### (693 SE2d 848)

ADAMS, Judge.

Appellant The Lamar Company LLC and appellee Whiteway Neon-Ad, a division of the Levin Industries, both own outdoor advertising signs located along I-85 in the City of Atlanta, Fulton County. Both signs, which are located within approximately 1,200 feet of each other, have been issued outdoor advertising permits by the Georgia Department of Transportation ("GDOT"), the state agency charged with the regulation of outdoor advertising. OCGA § 32-6-90. As more fully set forth below, both The Lamar Company and Whiteway have applied for permits to display multiple messages on their signs. However, because OCGA § 32-6-75 (c) (1) (C) provides that multiple message signs on the same side of the highway must be at least five thousand feet apart, only one of the two companies may be issued a multiple message permit.

The relevant facts, most of which were stipulated, show that in May 2005, Whiteway wrote the GDOT requesting approval to upgrade its existing sign by installing an approximately five feet by twenty feet electronic LED message center. Whiteway specifically stated that the change was being requested "with the understanding that the message will not change more than once per twenty-four hours,"[1] and the GDOT granted the request based on its determination that the change did not require any modification to the existing permit provided that condition was met.

In September 2006, Whiteway submitted an application seeking to revise its existing permit to an electronic multiple message permit. The GDOT granted the application, noting that "[a]ll revisions must be completed prior to the [one year] expiration date. In the event the revisions are not completed within the time allotted, the permit will revert back to the original sign configuration prior to the approved

---

[1] The sign changed to show the number of Atlanta area homes Metrobrokers had for sale each day.

revision." It is undisputed that the reprogramming required to make the sign function as a multi-message sign was completed prior to the one-year deadline, but the sign continued to change messages only once a day until approximately three weeks after the expiration of the deadline for revisions under the new permit.[2]

In early October 2007, Lamar submitted an application for a multiple message permit. The GDOT denied the application on October 31, 2007, giving as its reason that the Lamar sign was located within 5,000 feet of another multiple message sign (Whiteway's sign). However, on December 6, 2007, the GDOT notified Whiteway that "[d]ue to the fact that the revision . . . for [the sign] was not completed within the required 12 month period, [the] permit . . . reverts back to the original sign configuration prior to the revision effective date of September 11, 2006."

Both Whiteway and Lamar timely appealed the adverse GDOT decisions, and their appeals were consolidated for review by an administrative law judge. Following an evidentiary hearing on January 31, 2008, the ALJ rendered the Initial Decision in this matter concluding, inter alia, that Whiteway's multi-message permit had been improperly revoked because it met the permit condition by making all revisions to the sign necessary for it to begin displaying multiple messages by the one-year deadline. In its decision, the ALJ specifically found that Whiteway had complied with all applicable statutory and GDOT regulatory requirements and that by the deadline the permit required only that the work necessary to allow the sign to display multiple messages be completed, not that the multiple message capability actually be in use. Additionally, the ALJ rejected GDOT's contention that it had an internal policy defining a multi-message sign as a sign that changed displays at a minimum frequency, and found that there was nothing in the GDOT regulations or applicable code sections setting forth such a requirement.[3] The ALJ also found that the GDOT did not have a bright line policy or interpretation as to the minimum number of times the display of a multiple message sign must change. Instead, based on the testimony presented at the hearing, the ALJ found the GDOT's definition of a multiple message sign was "evolving," and thus not entitled to the deference usually accorded to a state agency interpretation of a statute it is charged with enforcing. Lastly, the ALJ concluded that since Whiteway had a valid multiple message permit for its sign,

---

[2] The record shows that all that was required for the sign to begin displaying multiple messages was reprogramming.

[3] Both the applicable statutory provisions and the GDOT's written policy on special permits for electronic multiple message signs address the maximum number of displays per cycle but neither sets forth a minimum frequency of change. See OCGA § 32-6-75.

Lamar's application was properly denied on the grounds that its sign was within 5,000 feet of the Whiteway sign.

Lamar sought Agency Review of the Initial Decision, and the GDOT issued a Final Decision on June 10, 2008. In the Final Decision, the Deputy Commissioner determined that although Whiteway's sign had undergone technological upgrades before the deadline for revisions expired, it was nevertheless "operating" no differently in the eyes of the motoring public than it had operated before the new permit was issued. Thus, the Deputy Commissioner concluded that if Whiteway was allowed to keep its multi-message permit, the GDOT might violate United States Supreme Court precedent by "applying the more restrictive regulatory scheme for a multiple message sign to a sign that is indistinguishable from a static sign." Based on the foregoing, the Deputy Commissioner reversed the Initial Decision of the ALJ.

Whiteway sought judicial review of the Final Decision arguing, among other things, that the Deputy Commissioner acted arbitrarily and capriciously by failing to address the issues framed by the December 6, 2007, notice that its permit was being invalidated because it did not make the necessary revisions to its sign by the stated deadline. Both the GDOT and Lamar opposed the petition. Following a hearing, the superior court reversed the Final Agency Decision. In its order, the superior court did not address Whiteway's argument that the Final Agency Decision should be set aside because the Deputy Commissioner failed to rule on the issue of whether Whiteway made the necessary revisions to the sign by the stated deadline. Instead, the superior court ignored the basis for the Final Agency Decision — that Whiteway's rights might be violated if it was allowed to retain the permit it was fighting to keep — and reversed that decision based on its findings and conclusions that Whiteway had fully complied with all applicable statutory and regulatory requirements prior to the deadline. The superior court also found that, even assuming the GDOT had an unwritten policy requiring a multi-message sign to change at a minimum frequency, Whiteway had no notice of that policy and thus the GDOT could not revoke its permit for its failure to comply with an unwritten policy of which it was unaware.

Lamar filed an application for discretionary review of the superior court's order. We granted Lamar's application, and this appeal timely followed.

We are guided, and indeed restrained, by several well-established principles in reviewing cases of this kind.

"[J]udicial review of an administrative decision is a two-step process." *Handel v. Powell*, 284 Ga. 550, 552 (670 SE2d 62) (2008). First, the reviewing court determines if there is sufficient evidence

498

under the appropriate standard to support the agency's findings of fact; and second, the court "examine[s] the soundness of the conclusions of law drawn from the findings of fact supported by any evidence." *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160 (3) (664 SE2d 223) (2008). "Thus, judicial review of an administrative decision does not end with the determination that the findings of fact have evidentiary support." *Handel,* 284 Ga. at 552.

As to the second step, OCGA § 50-13-19 (h) also sets out the parameters of a court's review of the legal conclusions made in an agency decision. Although the reviewing court accepts the findings of fact if there is any evidence to support those findings,

> [t]he court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: "(1) [i]n violation of constitutional or statutory provisions; (2) [i]n excess of the statutory authority of the agency; (3) [m]ade upon unlawful procedure; (4) [a]ffected by other error of law; . . . (6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Id.

And both this Court and the superior court review conclusions of law de novo. *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga. App. 141 (542 SE2d 538) (2000). Finally, "[w]hen this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Footnote omitted.) *City of LaGrange v. Ga. Public Svc. Comm.*, 296 Ga. App. 615, 616 (675 SE2d 525) (2009).

Viewed against this backdrop, we turn to the appeal before us. In its Final Agency Decision, the Deputy Commissioner essentially sidestepped the issues addressed and resolved by the ALJ in the Initial Decision, and in our view, did not directly address the issue of whether, applying the applicable provisions and regulations, Whiteway failed to make the necessary revisions to its sign. That was the issue framed by the GDOT's notice of revocation[4] and that was the issue, along with the related and ancillary questions raised by the GDOT's notice of revocation and subsequent administrative proceedings that was to be resolved. In our view, the Deputy Commissioner's findings and conclusions pertaining to governmental restric-

---

[4] As the ALJ noted, the GDOT was required by OCGA § 50-13-18 to inform Whiteway of the reason its permit was being revoked.

tions on commercial speech did not properly address and resolve these issues. Moreover, we find its conclusion — that allowing Whiteway to *keep* its permit would be unduly restrictive — to be arbitrary and capricious.

However, we cannot simply affirm the superior court's order reversing the Final Agency Decision. The superior court basically ignored the basis for the Agency's conclusion and essentially reviewed the decision of the ALJ instead. Although we understand this inclination since the ALJ's decision directly addressed the issues framed by the notice of revocation, it was that Final Agency Decision, and not the ALJ's decision, which was properly before the superior court for review. Thus, we must remand for reconsideration by the Agency in light of our decision. That decision will then be once again subject to review by the superior court.

*Case remanded with direction. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 22, 2010 —
RECONSIDERATION DENIED APRIL 7, 2010.

■■■■■■■■■■■■■■■■■■■■

*Webb, Klase & Lemond, Edward A. Webb, Matthew C. Klase*, for appellant.

*McKenna, Long & Aldridge, John M. Levengood, Bruce M. Edenfield, Bruce P. Brown*, for appellee.