## A11A1349. EAGLE WEST, LLC v. GEORGIA DEPARTMENT OF TRANSPORTATION.
### (720 SE2d 317)

PHIPPS, Presiding Judge.

Eagle West, LLC challenges a superior court order affirming the final agency decision of the Georgia Department of Transportation (DOT), which denied permits for outdoor advertising signs.[1] For reasons that follow, we affirm.

On December 30, 2009, Eagle West submitted applications to the DOT seeking permits to erect and maintain outdoor advertising signs adjacent to State Route 405, a/k/a Interstate 95 (I-95), near Horse Stamp Church Road in an unincorporated area of Camden County. On February 24, 2010, the DOT denied the permit applications "because the proposed sign locations are within the 500 foot blocked out zone for the proposed ramp interchange" to connect I-95 and Horse Stamp Church Road. The DOT cited OCGA § 32-6-75 (a) (18) of the Georgia Outdoor Advertising Control Act.[2]

In relevant part, that provision states, "No sign . . . shall be erected or maintained which . . . [i]s located outside of the corporate limits of a municipality and adjacent to an interstate highway within *500 feet of an interchange*, intersection at grade, or safety rest area."[3] As the parties acknowledge, the foregoing 500-foot zone is commonly

---

[1] See *The Lamar Co. LLC v. Whiteway Neon-Ad*, 303 Ga. App. 495 (693 SE2d 848) (2010) (recognizing that the DOT is the state agency charged with the regulation of outdoor advertising).

[2] OCGA § 32-6-70 et seq.

[3] (Emphasis supplied.)

referred to as the "blocked out zone."

Eagle West thereupon obtained review by an administrative law judge (ALJ) with the Office of State Administrative Hearings, asserting that the plain language of OCGA § 32-6-75 (a) (18) prohibited erecting and maintaining signs only near an "existing interchange" and that because there was no "existing interchange" at the intersection of I-95 and Horse Stamp Church Road, the DOT's denial of the permit applications should be reversed.

Acknowledging that "the interchange [was] not yet on the ground," the DOT countered that it was authorized to deny the permit applications, given the circumstances as set forth in the affidavit of the project manager for the construction project "known as the I-95 Interchange with Horse Stamp Church Road, Camden County, Georgia." Concerning the status of the project, he stated that "all preconstruction work on the project has been completed. The design, environmental and right of way phases are complete, the right of way has been certified, and funding is approved for the construction phase." Further, he stated that a construction contract would be awarded on or about July 16, 2010, ground was expected to be broken by September 2010, and construction was scheduled to be completed with the interchange fully operational within 24 months "from notice to proceed of the construction contract." Citing *Fulton County v. Davidson*,[4] the DOT sought a broad holding that because construction of the interchange would begin within two years, denial of the permit applications was proper.

The ALJ rejected the DOT's argument and ruled in favor of Eagle West, determining that OCGA § 32-6-75 (a) (18) "specifically prohibits the placement of signs within 500 feet of an interchange (not a 'present road,' 'present interchange,' 'future interchange,' etc). This Court will not assume that the General Assembly meant to include proposed interchanges as part of this prohibition."

The DOT obtained agency review of the ALJ's decision. And in the final agency decision, the deputy commissioner of the DOT determined that, contrary to the ALJ's characterization, the interchange was not "merely 'proposed' "; instead, "the interchange is nearly completed in the sense that construction is the very last phase of a very long series of events"; and Eagle West's signs "would have to be removed . . . once the interchange is completed and operational since maintenance of a sign in the block[ed]-out zone would violate . . . OCGA § 32-6-75 (a) (18)." Further, the deputy commissioner reasoned that "construing 'interchange' to include only infrastructure that is already in operation, as the ALJ appears to do, would

---

[4] 253 Ga. 734 (325 SE2d 135) (1985).

lead to absurd and highly impractical results." As examples, the deputy commissioner cited the granting of permits for "signs that would have to be torn down in short order," and that "since removal of the sign would be considered a 'taking,' the [DOT] would be required to provide just compensation to the billboard owner." The deputy commissioner stated further in the final agency decision that the ALJ had "incorrectly dismissed the applicability of *Fulton County v. Davidson*"[5] and that for purposes of outdoor advertising permits, an interchange "does exist at I-[95] and Horse [Stamp Church] Road. No signs can be erected within the block[ed]-out zone surrounding this interchange." Consequently, the DOT's final agency decision reversed the ALJ's decision, ruling that Eagle West's permit applications were denied.

The superior court affirmed the DOT's final agency decision, albeit upon a more expansive holding: "[O]nce the location of an interchange is publicly announced, [the DOT] is authorized to deny requests for permits to build signs at or adjacent to the site of the interchange which would violate the limitations imposed by OCGA § 32-6-75 (a) (18)."

We granted Eagle West's application for discretionary review. Eagle West contends that the superior court erred by affirming the denial of its permit applications;[6] it also contests the superior court's holding that OCGA § 32-6-75 (a) (18) allows the DOT to deny applications upon public announcement of the location of an interchange.

The General Assembly has delegated, "in no uncertain terms, . . . the regulation of outdoor advertising to the DOT."[7] Notwithstanding, "DOT decisions regarding outdoor advertising permits are subject to judicial review pursuant to the Georgia Administrative Procedure Act."[8] Thereunder, judicial review of an administrative decision requires the court to determine whether the findings of fact are supported by "any evidence" and to examine the soundness of the conclusions of law that are based upon the findings

---

[5] Supra. In particular, the DOT's final agency decision noted that *Davidson* was "based on statutory language pertaining to rights-of-way, but the *Davidson* Court emphasized the same policy considerations that were present here. Specifically, it emphasized the Department's need for orderly planning and construction of public roads and highways. . . . 253 Ga. at 735."

[6] See generally *Fulton County v. Action Outdoor Advertising, JV, LLC*, 289 Ga. 347, 349 (1) (711 SE2d 682) (2011) (holding that sign companies had obtained vested rights in the issuance of the permits they sought).

[7] *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 293 (2) (b) (630 SE2d 878) (2006); see *The Lamar Co. LLC*, supra; OCGA § 32-6-90 (authorizing the DOT to promulgate regulations governing permits for outdoor advertising).

[8] *Walker*, supra at 288 (1), citing OCGA § 32-6-95 (a).

of fact.[9] While the judiciary accepts the findings of fact if there is any evidence to support the findings,[10]

> the court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; . . . (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[11]

> And both this Court and the superior court review conclusions of law de novo. Finally, when this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency.[12]

Guided by these principles, we turn to the issues before us. Eagle West maintains that the DOT was not authorized to deny its permit applications under OCGA § 32-6-75 (a) (18). It argues that the provision's language, "within 500 feet of an interchange," is plain and unambiguous, and therefore the Code provision "does not prohibit signs in areas where there could be a future interchange, where an interchange is planned but does not yet exist, or, as the trial court ruled, in an area where 'the location of a new interchange is publicly announced.' "

> While judicial deference is afforded an agency's interpretation of statutes it is charged with enforcing or administering, the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes. It is the role of the judicial branch to interpret the statutes enacted by the legislative branch and enforced by the executive branch, and administrative rulings will be adopted only when they conform to the meaning which the court deems should properly be given. The judicial branch

---

[9] *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160 (3) (664 SE2d 223) (2008); *The Lamar Co. LLC*, supra at 497-498.

[10] *Pruitt Corp.*, supra at 161 (3); *The Lamar Co. LLC*, supra at 498.

[11] OCGA § 50-13-19 (h); see *Pruitt Corp.*, supra; *The Lamar Co. LLC*, supra.

[12] *The Lamar Co. LLC*, supra (citations and punctuation omitted); *City of LaGrange v. Ga. Public Svc. Comm.*, 296 Ga. App. 615, 616 (675 SE2d 525) (2009).

makes an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the statute and comports with the legislative intent.[13]

Our legislature has expressly stated its intent in enacting the Outdoor Advertising Control Act: "It is the intention of the General Assembly to provide a statutory basis for the regulation of outdoor advertising, such basis to be consistent with the public policy relating to areas adjacent to roads of the state highway system which also form a part of the interstate and primary systems of highways declared by the Congress in Title 23, Section 103, United States Code."[14] Furthermore,

[t]he General Assembly declares it to be the policy of this state that the erection or maintenance of outdoor advertising in areas adjacent to the rights of way of roads of the state highway system, which roads are also a part of the interstate and primary systems of highways within the state, shall be regulated in accordance with the terms of this part and the regulations promulgated by the commissioner pursuant thereto and that all outdoor advertising which does not conform to the requirements of this part is a public nuisance.[15]

As this court has ascertained, "The intent of the General Assembly, when the entire [Outdoor Advertising Control] Act is read together, is to protect the public traveling along the highway from distractions."[16] And with respect to the specific statutory provision at issue here, we have determined: "The minimization of distractions by signs in the area of an interchange is precisely the intent and purpose behind the blocked-out zone contemplated in [OCGA § 32-6-75 (a) (18)]."[17]

---

[13] *Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008) (citations and punctuation omitted).

[14] OCGA § 32-6-70 (a); see *Walker*, supra at 293 (2) (b).

[15] OCGA § 32-6-70 (a).

[16] *Turner Communications Corp. v. Ga. Dept. of Transp.*, 139 Ga. App. 436, 438 (2) (b) (228 SE2d 399) (1976) (emphasis omitted); see *Nat. Advertising Co. v. Ga. Dept. of Transp.*, 149 Ga. App. 334, 338 (3) (254 SE2d 571) (1979).

[17] *Nat. Advertising Co.*, supra at 338 (3) (reviewing former Code Ann. § 95A-916 (r), which pertinently provided, "No sign . . . shall be erected or maintained which . . . is located outside of the corporate limits of a municipality and adjacent to an interstate highway within 500 feet of an interchange, intersection at grade, or safety rest area."); see *Ga. Dept. of Transp. v. Spells Sign Co.*, 141 Ga. App. 350, 353 (233 SE2d 435) (1977).

Focusing solely on the statutory clause "within 500 feet of an interchange" falls short of adequately addressing the underlying issue presented: whether the record shows that the DOT was authorized to deny the permit applications. Having considered the cited clause, not only within the context of the statutory provision in which it is found, but also as part of related statutory provisions so as to give effect to the legislative scheme as a whole,[18] we cannot conclude that the DOT impermissibly denied Eagle West's permit applications.

At the relevant time,[19] OCGA § 32-6-74 (a) stated that permits and renewals

> shall be issued for and shall be valid only if the sign is erected and maintained in accordance with this part during the 12 month period next following the date of issuance. . . . Upon receipt of a properly executed application and the appropriate fee for the erection or maintenance of a sign which may be lawfully erected or maintained pursuant to this part, the department shall . . . issue a permit or renewal authorizing the erection or maintenance, or both, of the sign for which application was made.

As defined by the Outdoor Advertising Control Act, "erect" means "to construct, build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish";[20] "maintain" means "to allow to exist."[21] And, as stated above, OCGA § 32-6-75 (a) (18) particularly provides, "No sign . . . shall be erected or maintained . . . within 500 feet of an interchange."[22]

Although Eagle West points to undisputed evidence that, as of the date it submitted its permit applications, ground had not been broken to connect I-95 and Horse Stamp Church Road, that circumstance is not dispositive of whether Eagle West was entitled to the requested permits. Rather, upon the receipt of Eagle West's properly executed permit applications, together with the appropriate fees, the DOT was required to determine whether Eagle West's signs could be erected without violating, inter alia, OCGA § 32-6-75 (a) (18).[23] Given

---

[18] See *Harris v. State*, 286 Ga. 245, 247 (4) (686 SE2d 777) (2009) (looking beyond the specific provision at issue to the statutory scheme as a whole).

[19] OCGA § 32-6-74 was amended in 2011, see Ga. L. 2011, p. 601, § 1, but the amendment controls no issue in this case.

[20] OCGA § 32-6-71 (5).

[21] OCGA § 32-6-71 (10).

[22] OCGA § 32-6-75 (a) (18).

[23] OCGA § 32-6-74 (a).

the evidence in this case of the completed tasks of the interchange project, as well as the time line to complete the outstanding work, the DOT was authorized to determine that the interchange project had progressed to a point such that, for purposes of OCGA § 32-6-75 (a) (18), it constituted an interchange.[24] Because the denial of Eagle West's permit applications was thus not improper, Eagle West has not demonstrated any basis for reversing or modifying the final agency decision.[25]

By so concluding, we have rejected Eagle West's argument that, because the word "interchange" in OCGA § 32-6-75 (a) (18) is unaccompanied by any modifier such as "planned," "proposed," or "future," the word is plain and unambiguous as limited to interchanges that are structurally "existing." Eagle West's argument disregards that the word "interchange" also is unaccompanied in the statute by any other modifier such as "functioning," "operational," "paved," or "fully constructed." The legislature could have included circumscribing language, but it did not.[26] Thus, we do not conclude that the word "interchange" is so plain and unambiguous that the General Assembly intended it to be limited as urged by Eagle West. Moreover, "[p]articular words of statutes are not interpreted in isolation; instead, courts must construe a statute to give sensible and intelligent effect to all of its provisions, and must consider the statute in relation to other statutes of which it is part."[27] The word "interchange" then must be considered within the context of OCGA § 32-6-75 (a) (18), which in turn,

must be construed in relation to other statutes of which it is

---

[24] See generally OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter.").

[25] See OCGA § 50-13-19 (h); *Pruitt Corp.*, supra; *The Lamar Co. LLC*, supra. We need not decide whether the final agency decision should have adopted the bright-line rule proposed to the ALJ by the DOT – that where construction of an interchange would begin within two years, denial of a permit application is proper; nor do we adopt the superior court's holding that the DOT may deny applications upon public announcement of the location of an interchange.

[26] See OCGA § 1-3-1 (a) (in all interpretations of statutes, courts shall look diligently for the intention of the General Assembly); *Innovative Clinical & Consulting Services, LLC v. First Nat. Bank of Ames*, 279 Ga. 672, 675 (620 SE2d 352) (2005) (courts cannot reject the plain language of a statute unless it will lead to unreasonable consequences or absurd results not contemplated by the legislature); *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981) (legislative intent prevails over the literal import of words; statutory language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent).

[27] *U. S. Bank Nat. Assn. v. Gordon*, 289 Ga. 12, 14-15 (4) (709 SE2d 258) (2011) (citations and punctuation omitted).

a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.[28]

Having done so, we conclude that the final agency decision denying Eagle West's permit applications comports with OCGA § 32-6-75 (a) (18) and the Outdoor Advertising Control Act. It also comports with OCGA § 32-1-2, which states:

The purpose of [Title 32, which is known as the Georgia Code of Public Transportation and wherein lies the Outdoor Advertising Control Act] is to provide a code of statutes for the public roads and other transportation facilities of the state, the counties, and municipalities of Georgia. The legislative intent is to provide an effective legal basis for the organization, administration, and operation of an efficient, modern system of public roads and other modes of transportation.

As has been legislatively declared: "[The Georgia Code of Public Transportation] shall be construed liberally to effectuate its purposes."[29]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED NOVEMBER 28, 2011 — 

*Schreeder, Wheeler & Flint, Mark W. Forsling*, for appellant.
*Samuel S. Olens, Attorney General, Mary Leddy Volkert, Joanna M. Campbell, Assistant Attorneys General*, for appellee.

---

[28] *Pafford v. Biomet*, 264 Ga. 540, 542 (1) (448 SE2d 347) (1994) (citation omitted).
[29] OCGA § 32-1-11; see generally *Walker*, supra at 291 (2) (a) (OCGA § 32-2-2 generally provides DOT with authority to manage and maintain the state's highways); OCGA § 32-2-2 (a) (1) (DOT's powers and duties, "unless otherwise *expressly* limited by law, shall include but not be limited to the following: . . . [The DOT] shall plan, designate, improve, manage, control, construct, and maintain a state highway system and shall have control of and responsibility for all construction, maintenance, or any other work upon the state highway system and all other work which may be designated to be done by the department by this title or any other law") (emphasis supplied), (b) ("In addition to the powers specifically delegated to it in this title, the [DOT] shall have the authority to perform all acts which are necessary, proper, or incidental to the efficient operation and development" of the state highway system; and "this title shall be liberally construed to that end.").