**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 27, 2024**

# In the Court of Appeals of Georgia

A24A0100. VICTORY MEDIA GROUP LLC v. GEORGIA
        DEPARTMENT OF TRANSPORTATION.

LAND, Judge.

The Georgia Department of Transportation ("GDOT") denied Victory Media

Group, LLC's petition for a "multiple message sign"[1] permit along State Route 400

in Dawson County because the proposed sign did not comply with the spacing

requirements of OCGA § 32-6-75 (c) (1) (C) (prohibiting two multiple message signs

from being located within 5,000 feet of one another on the same side of the highway).

An administrative law judge ("ALJ") confirmed the GDOT's decision after an

---

[1] Multiple message signs are signs that are able to "change the message or copy
on the sign electronically by movement or rotation of panels or slats," or by other
means, like a digital display. OCGA § 32-6-71 (11.1); § 32-6-75 (c) (1) (F). An example
of an MMS is an electronic or digital billboard, as opposed to a traditional billboard.

administrative review hearing. Victory then filed a petition for judicial review of that decision by the Superior Court of Dawson County. The Superior Court affirmed the GDOT's decision, and this Court granted an application for discretionary review to determine how OCGA § 32-6-75 (c) (1) (C)'s spacing prohibition applies when two controlled routes intersect one another.[2] Because we find that the ALJ correctly concluded that the statute prohibits one multiple message sign from being located within 5,000 feet of another such sign on the "same side of the highway," and that the existing multiple message sign permits are not invalid, we affirm.

The record shows that on September 14, 2021, Victory Media filed an application with the GDOT for outdoor advertising permits to erect a billboard sign in Dawson County at the intersection of State Route 53 ("GA-53") and State Route 400 ("GA-400"). In October 2021, the GDOT granted Victory Media's application for a standard permit, but it denied the application for a multiple message supplement permit. The basis of the GDOT's denial was OCGA § 32-6-75 (c) (1) (C), which

---

[2] This Court also granted an application for discretionary review in *AMG, LLC v. Georgia Depart. of Transp.*, ___ Ga. App. ___ (Case No. A24A0376) (2024) to interpret the spacing prohibition in OCGA § 32-6-75 (c) (1) (C). An opinion was issued in *AMG,* supra, on June 26, 2024. That well-reasoned opinion is consistent with the decision reached in this case.

prohibits two multiple message signs located within 5,000 feet of one another on the same side of the highway.

The GDOT's order notes that there are two pre-existing signs that held valid multiple message permits from the GDOT along the "same side" of GA-400 and within 5,000 feet: Permit No. D3674, which lies south of the proposed sign, and Permit No. D3675, which lies to the north. It is undisputed that both of these signs are located along the eastern side of GA-400, are within 660 feet of GA-400, and are within 5,000 feet of the proposed sign.

Victory Media sought review of the denial with the Office of State Administrative Hearings. After holding an evidentiary hearing, the ALJ issued an initial decision affirming the GDOT's denial of a multiple message permit. Victory Media then sought agency review of the GDOT's initial decision in September 2022. After a hearing, the ALJ entered the final decision of the GDOT, which affirmed the initial decision. Victory Media then petitioned for judicial review before the Superior Court of Dawson County. After a hearing, the superior court affirmed the GDOT's decision. The superior court's order determined that the "spacing limitation in

OCGA § 32-6-75 (C) (1) (C) applies as measured along the eastern-side of GA-400."

This Court granted Victory Media's application for discretionary review.

The GDOT "decisions regarding outdoor advertising permits are subject to judicial review pursuant to the Georgia Administrative Procedure Act." *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 288 (1) (630 SE2d 878) (2006), citing OCGA § 32-6-95 (a). Judicial review of an administrative decision requires this court to determine whether the findings of fact are supported by "any evidence" and to examine the soundness of the conclusions of law that are based upon the findings of fact. *Eagle West, LLC v. Ga. Dept. of Transp.*, 312 Ga. App. 882, 885 (720 SE2d 317) (2011). While this Court accepts the findings of fact if there is any evidence to support the findings, we may

> reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; . . . (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13-19 (h). See also *Eagle West*, 312 Ga. App. at 885. Both this Court and the superior court review conclusions of law de novo. *Eagle West*, 312 Ga. App. at 885.

4

"[W]hen this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."(Footnote omitted.) Id. Guided by these principles, we turn to the issues before us.

1. Victory Media argues that the GDOT and the superior court erred in relying on GDOT Permit Nos. D3674 and D3675 as the basis for its denial under OCGA § 32-6-75 (c) (1) (C). Victory Media argues that its proposed sign is not located "on the same side of the highway" for purposes of the 5,000-foot spacing prohibition in OCGA § 32-6-75 (c) (1) (C) because it is "oriented" towards GA-53, not GA-400. We do not agree.

The Outdoor Advertising Control Act (OCGA § 32-6-70 et seq.) grants the GDOT the power to regulate outdoor advertising along Georgia's roadways. See *Walker*, 279 Ga. App. at 293 (2) (b). The Act provides that "[i]t is the intention of the General Assembly to provide a statutory basis for the regulation of outdoor advertising, such basis to be consistent with the public policy relating to areas adjacent to roads of the state highway system[.]" OCGA § 32-6-70 (a). OCGA § 32-6-90

further authorizes the GDOT to promulgate regulations governing permits for outdoor advertising. The GDOT requires that off-premises signs (i. e. billboards) be permitted by the GDOT before being erected or maintained. Ga. Comp. R. & Regs. r. 672-6-.03 (1) (a). Among other things, the Act regulates the size, structure, and location of such off-premises signs, including their distance from other signs. The Act was amended in 2019 to include "multiple messages signs" within the scope of the Department's regulations. See OCGA § 32-6-75 (2019 Ga. L. 260 § 1) (eff. July 1, 2019).

The language at the heart of this dispute is OCGA § 32-6-75 (c) (1) (C), which provides in relevant part: "Multiple message signs shall be permitted on the interstate system, primary highways, and other highways under the following conditions: . . . No such multiple message sign shall be placed within 5,000 feet of another multiple message sign *on the same side of the highway*[.]" (emphasis supplied).

When interpreting the meaning of a statute, this Court must "afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere

6

surplusage." (Punctuation and footnotes omitted.) *Dekalb County Bd. of Tax Assessors v. Barrett*, 361 Ga. App. 598, 600-601 (865 SE2d 192) (2021). Thus, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly." (Punctuation and footnote omitted.) Id.

Here, the plain language of OCGA § 32-6-75 (c) (1) (C) clearly provides that there cannot be two multiple message signs within the prohibited spacing limitation on "the same side of the highway." Based on the plain and ordinary meaning of the phrase "on the same side of the highway," the spacing prohibition may apply when two signs are both on the north, south, east or west side of a highway. Although Victory Media argues that the phrase "the highway" only refers to "State Route 53, the highway where the sign is located and to which it is oriented," this argument ignores the fact that the proposed sign is at the intersection of *two* highways and is thus located along both highways for purposes of the spacing limitation. Victory Media's proposed interpretation would have this Court add the word "oriented" to the statute. There is nothing in the plain language of OCGA § 32-6-75 (c) (1) (C) to indicate that the spacing prohibition is contingent upon the orientation of a sign or to

which highway the sign is directly on. Instead, the application of the spacing prohibition depends upon the distance between the signs and whether the signs on are on the same side of the highway. It is clear under the facts of this case that the two existing signs and the proposed sign are located on the same, eastern-side of GA-400, thus triggering the applicability of the spacing limitation. See, e. g. *Turner Communications Corp. v. Ga. Dept. of Transp.*, 139 Ga. App. 436, 436-438 (2) (a) (228 SE2d 399) (1976) (former statute which prohibited co-existence of signs that were "located adjacent to an Interstate highway" and were "within 500 feet of another sign on the same highway" applied to bar the co-existence of a sign located directly on the interstate and oriented for display to motorists there and a sign located directly on a street and oriented for display to motorists there; although the signs were not on the "same side" of the street, they were on the "same side" of the interstate and within 500 feet of each other).

We also reject Victory Media's argument that the proposed sign's orientation towards GA-53 or its visibility from GDOT Permit No. D3674 are relevant factors for the purposes of OCGA § 32-6-75 (c) (1) (C). While certain spacing prohibitions in OCGA § 32-6-75 contain visibility exceptions, OCGA § 32-6-75 (c) (1) (C) does not.

See OCGA § 32-6-75 (a) (17) (providing that standard signs may not be located within 500 feet of one another "on the same side of the highway" *unless* "buildings or other obstructions" make it "so that only one sign face located within the 500 foot zone is visible . . . at any time"); OCGA § 32-6-75 (a) (14) (sign may not be located within 500 feet of a public park, public recreation area, forest, scenic area or cemetery unless "the sign is separated by buildings or . . . obstructions so that the sign . . . is not visible from the public park"). If the General Assembly had desired to create a simultaneous-visibility exception for the spacing prohibition in OCGA § 32-6-75 (c) (1) (C), it could have done so as it did for other spacing prohibitions in the statute. See *Truist Bank v. Stark*, 359 Ga. App. 116, 119 (1) (854 SE2d 784) (2021) (when the "General Assembly includes particular language in one section of the statute, but omits it in another section of the same Act, it is generally presumed that the General Assembly acts intentionally and purposely in the disparate inclusion or exclusion") (citation and punctuation omitted).

Based upon the above, we conclude that the GDOT and the Superior Court correctly ruled that Victory Media's proposed multiple message sign is on the "same

side of the highway" under OCGA § 32-6-75 (c) (1) (c) as the two already-established signs.

2. Victory Media claims that the multiple media sign permit for Permit No. D3674, which has been in existence for a decade, was invalid because the actual construction of the multiple message signs allegedly did not occur within one year of receipt of the permit, in violation of the GDOT's regulations. See Ga. Comp. R. & Regs. r. 672-6-.08 (3) (a)-(c) (permits shall expire if the holder fails to "erect and operate the sign within twelve (12) months of issuance" unless an approved revision has been completed); OCGA § 32-6-77 ("signs which are not lawfully erected or maintained shall not be counted... for the purpose of determining spacing limitations prescribed in OCGA § 32-6-75"). This argument is an affirmative defense on which Victory Media bore the burden of proof. Here, Victory has failed to meet its burden of showing that Permit No. 3674 was invalid.

The evidence shows that on August 9, 2010, Roma Outdoor Creations, Inc. ("Roma") applied for and received a multiple message permit (Permit No. D3674), which was valid for 12 months. In May 2011, Roma asked the GDOT for approval for a modification for the sign. On June 1, 2011, Roma sent a letter to a local government

official, stating that it had not yet been able to build the proposed sign due to tough economic conditions and requested a six month extension. On July 18, 2011, the GDOT denied the requested modification, stating that it required government approval. On August 8, 2011, one day before the expiration of the 12 month deadline, Roma received the local government approval and the GDOT issued approval for the requested modification on August 9, 2011. The record does not reflect when the sign was erected, but it was not done within the initial 12 month timeline.

Walter Allen Sanders, the GDOT's outdoor advertising manager, testified at the administrative hearing that Permit No. D3674 maintains both a standard and multiple message permit, which the GDOT regards as valid and that there is nothing in the GDOT's files to indicate that it was invalid. Beth Perkins testified at the hearing that she was the outdoor advertisement manager at the GDOT from 2013 to 2015 and that she did not revoke the permits. The GDOT has never taken adverse action against Permit No. D3674 for being an unauthorized or illegal sign, and the permit has remained active, has been renewed annually since its issuance in 2010, and was transferred from Roma to another entity in 2012 and from that entity to Clear Channel Outdoor in 2022.

Based upon the above, we find that there was sufficient evidence in the record to support the ALJ's finding that Permit No. D3674 was not revoked by the GDOT or by operation of law. Although the sign may not have been erected within the 12 month deadline, there is evidence that the GDOT approved Roma's revision request before the expiration of the 12 month deadline. On August 8, 2011, one day before the expiration of the 12 month deadline, Roma received the local government approval and the GDOT issued approval for the requested modification. There is no evidence in the record that the GDOT considered the sign invalid as having been built in an untimely manner.[3] Rather, the evidence in the record indicates that the GDOT considered the permit to be "active and in good standing" with the GDOT, and the permit holders operating these signs have relied upon the GDOT's determination in this respect.

---

[3] The language of the GDOT's August 9, 2010 letter granting Permit No. D3674 to Roma provides that if the sign was not constructed within 12 months and the permit holder failed to properly fill out a renewal application and fees before the expiration of the permit, the GDOT "will notify the sign owner that the renewal application is overdue and give the sign owner thirty (30) days to submit the appropriate and application and fees." See OCGA § 32-6-74 (a) (If the GDOT "fails to receive the renewal before the expiration date, the department shall notify the permit holder by certified mail that the renewal is overdue and shall give the permit holder 45 days from the date of the postmark on such notice to send the department the renewal"). Here, there is no indication that the GDOT considered that the renewal application was incomplete or insufficient because there is no evidence that the GDOT sent such required notice to Roma.

Indeed, there is evidence that the permit has been renewed annually and even allowed to transfer ownership. See e. g., *Eagle West*, 312 Ga. App. at 886.

Further, the GDOT cannot summarily revoke such permit without first giving the party that holds it notice and an opportunity to be heard on the issue. Due process "requires that one to whom a license is denied, or one whose valid license is being revoked or suspended, be given notice and an opportunity to be heard." *Goldrush II v. City of Marietta*, 267 Ga. 683, 693 (6) (482 SE2d 347) (1997). Compare *Corey Outdoor Advertising v. Bd. of Zoning Adjustments of City of Atlanta*, 254 Ga. 221, 227 (327 SE2d 178) (1985) (issuance of building permit to erect billboard was prohibited by a zoning ordinance and did not vest any rights in permit holder, as building permit *was invalid and void when issued*). Victory Media has failed to identify any law or regulation that would enable the GDOT to invalidate existing multiple message signs held by the competing sign owners during the pendency of this action. See Ga. Comp. R. & Regs. r. 672-6-.08 (1) (requiring the GDOT to give notice that a permit is being revoked if and when the GDOT takes action for failure to construct and operate a sign within the required time limits).

3. Victory Media also argues that the Outdoor Advertising Act, OCGA § 32-6-70 et. seq., unconstitutionally violates their right to free speech. We reject these claims for the same reasons set forth in *AMG, LLC v. Ga. Dept. of Transp.*, ___ Ga. App. ___ (5) (Case No. A24A0376, decided June 26, 2024) (AMG could not raise constitutional challenges to any content-based provisions of the Outdoor Advertising Control Act when no such provisions had been enforced against it). See also *Victory Media Group, LLC v. Ga. Dept. of Transp.*, ___ Ga. ___ (Peterson, J., concurring) (Case No. S24C0144, decided April 14, 2024) (a party whose permit for an MMS was denied based on the spacing provisions of OCGA § 32-6-75 (c) (1) (C) failed to show that it was harmed by any content-based provisions of the Outdoor Advertising Control Act and the regulations promulgated thereunder).

*Judgment affirmed. Miller, P. J., and Markle, J., concur.*