## A04A1426. GEORGIA DEPARTMENT OF AGRICULTURE v. BROWN.

(607 SE2d 259)

BARNES, Judge.

The Georgia Department of Agriculture ("GDA") seeks review of a superior court order reversing the revocation of Tommie Brown's license to sell produce at the State Farmers' Market in Columbus. For the reasons that follow, we reverse.

Brown owns a family farm, and he and his family have sold produce at the Columbus Farmers' Market for approximately 40 years. The market manager began receiving complaints about loud music from vehicles parked at Brown's stall, about Brown employees videotaping customers at other stalls, and about employees and visitors to Brown's stall washing their vehicles with common water intended only for washing produce. The market manager forwarded several written complaints to the GDA regarding these acts, and testified that Brown or his employees had obstructed traffic with stacks of firewood, cut wood within the market, and failed to clean up wood debris.

Based on these complaints and under the authority of the Marketing Act, OCGA § 2-10-60 (1), (2), the Commissioner of the GDA ("Commissioner") entered an administrative order listing the complained-of acts and revoking Brown's license to sell at the market effective ten days from the order's receipt, unless he requested a hearing. Brown timely requested a hearing pursuant to OCGA § 2-10-60 (2), which was conducted before an Administrative Law Judge who received evidence and heard testimony from witnesses for both sides. The ALJ found that Brown's license to use the State Farmers' Market stated on its face that it was subject to revocation for violation of the Georgia Marketing Act, and its rules and regulations.

The ALJ found as facts that Brown or his agents improperly disposed of trash, disrupted the market by playing very loud music, which continued after requests to lower the volume, continued to cut firewood and obstruct traffic after requests to cease, and harassed customers. The market manager received both verbal and written complaints from customers and other vendors. The ALJ concluded that the Commissioner proved by a preponderance of evidence that Brown had violated the rules and regulations implementing the Marketing Act, and suspended his license to sell at the Columbus Farmers' Market for six months.

Brown filed an application for a GDA review of the ALJ's decision pursuant to OCGA §§ 50-13-17 and 50-13-41. The Commissioner accepted the ALJ's findings of fact and conclusions of law, but modified Brown's sanction to revoke his license rather than suspend it. The Commissioner noted that the ALJ found that Brown had

violated two regulations in addition to the one alleged in the initial administrative order, and had stated no mitigating circumstances that would warrant a lesser sanction.

Brown then appealed to the Superior Court of Schley County, which reversed the Commissioner's order and reinstated Brown's license. The court based its ruling on two grounds, that Brown was never notified in writing of the conduct complained of, as required by OCGA § 50-13-18 (c), and that the evidence of violations was insufficient to support the revocation. The court thus concluded that the Commissioner's order exceeded his statutory authority, that the procedures he used were unlawful, and that his findings and conclusions were clearly erroneous. The court further held that the administrative decision was arbitrary, capricious, and an abuse of discretion.

The GDA appealed, arguing that the superior court erred in construing the notice provisions of the Administrative Procedure Act and the Marketing Act, and in using an improper standard of review. Brown failed to file a responsive brief, despite being ordered by this court to do so.

1. The GDA contends that the trial court erred in finding that the agency violated OCGA §§ 50-13-18 (c) and 50-13-19 (h) because it gave Brown no opportunity to respond to complaints before revoking his license.

The GDA's authority to revoke Brown's license is controlled by the Marketing Act, OCGA § 2-10-50 et seq. In revoking Brown's license, the GDA relied on former OCGA § 2-10-60 (1), which provided that the Commissioner may issue an order revoking a license upon violation of farmers' market rules and regulations, that order to be effective "upon a later date without [a] hearing" unless the recipient of the order requests a hearing within ten days of receipt. By contrast, OCGA § 50-13-18 (c) of the APA provides in pertinent part, "No revocation . . . of any license is lawful unless, prior to the institution of agency proceedings, the agency has sent notice . . . of individual facts or conduct which warrant the intended action and the licensee has been given an opportunity to show compliance with all lawful requirements for the retention of the license."

The issue is thus whether the GDA's administrative order is sufficient to demonstrate compliance with OCGA § 50-13-18 (c). The superior court determined that it was not, because notice and opportunity to be heard were not given "prior to the institution of agency proceedings" as required by OCGA § 50-13-18 (c). The court further determined that the agency exceeded its statutory authority, used unlawful procedures, and was clearly erroneous because the record showed that Brown committed no violations after he received the revocation order.

Our case law does not support the superior court's analysis. In *Hinson v. Ga. State Bd. of Dental Examiners*, 135 Ga. App. 488 (218 SE2d 162) (1975), we held that the intent of OCGA § 50-13-18 (c)

> is to give a licensee a hearing, and an opportunity to be heard where he can demonstrate that at the time of the alleged violation he was in full compliance with the law. Appellant here was afforded a hearing where he endeavored to show that his conduct was lawful. He was entitled no other hearing under the statute.

Id. at 489. *Hinson* did not interpret OCGA § 50-13-18 (c) in relation to any specific agency notice and hearing statute, but its explanation that the intent behind OCGA § 50-13-18 (c) is satisfied when a licensee receives a hearing to contest agency action is applicable to this situation. See also, e.g., *City Council of St. Marys v. Crump*, 251 Ga. 594, 595 (3) (308 SE2d 180) (1983) (agency notice/hearing statute may provide that decision to revoke license may precede hearing).

Brown's burden at his administrative hearing subsequent to the GDA order was to demonstrate compliance with the rules and regulations of the market. Accordingly, the GDA's administrative order which informed Brown of the revocation of his license, of the conduct giving rise to such action, and of his right to a hearing in the matter complied with OCGA § 50-13-18 (c). The superior court's determination to the contrary is error.

Further, the superior court determined that evidence that Brown committed no violations after he received the GDA's revocation order was sufficient "to show compliance with all the lawful requirements for the retention of the license" under OCGA § 50-13-18 (c). Yet, per *Hinson*, the compliance contemplated by the statute is compliance with lawful requirements at the time of the alleged violations, not subsequent compliance after notice has been given. *Hinson v. Ga. State Bd. of Dental Examiners*, supra, 135 Ga. App. at 489.

2. The trial court also reversed the Commissioner's final order because it found that "no evidence that Tommie Brown or any of his agents committed any of the aforesaid violations" except that one of Brown's sons may have used a video camera to tape the actions of other vendors that Brown contends were allowed to violate the rules. The court further found that no evidence indicated that Brown or his employees played music too loudly. In its appeal, the GDA argues that the trial court misapplied the standard of review and failed to give appropriate weight to the ALJ's factual findings. We agree that the trial court used the wrong standard of review in this case and improperly reweighed the evidence presented at the administrative hearing.

The superior court's evidentiary review of an agency decision under the APA is not de novo. Instead,

> [t]he superior court reviews the [agency's] order to determine whether its findings of fact are supported by any evidence. As we then review the superior court's actions, we again construe the evidence in favor of the decision rendered. However, both the superior court and this court review conclusions of law de novo.

(Citations omitted.) *Municipal Elec. Auth. v. Ga. Public Svc. Comm.*, 241 Ga. App. 237, 238-239 (1) (525 SE2d 399) (1999).

In this case, the superior court's task was to determine whether any evidence supported the agency decision to revoke Brown's market license. Contrary to the court's conclusion that no evidence supported the agency's decision, a review of the hearing transcript reveals ample evidence to support it.

The license itself states that the individual

> named hereon is hereby granted a state farmers' market license to use the State Farmers' Market in the State of Georgia, subject to the market laws of Georgia and rules and regulations. . . . The license is subject to revocation by the Commissioner of Agriculture for violations of laws and rules and regulations pursuant thereto.

While the rules and regulations that applied as of the hearing and decision in March and May 2003 are not included in the record,[1] and those rules were amended in 2004, the parties indicated at the hearing that Ga. Comp. R. & Regs. r. 40-9-9, the former Local Rules for the Columbus Farmers' Market, provided that a license could be revoked for conduct "that is a danger to the orderly operation of the market."

The market manager testified that she had received complaints from customers and other vendors that Brown employees were filming them, washing their cars, and playing music too loudly, including four written complaints. The manager witnessed these activities herself, and asked the employees to stop washing their cars

---

[1] The rules and regulations implementing the Market Act were revised effective September 2004. Local rules were repealed and the general rules now specifically prohibit playing music that disturbs others, disposing of trash in containers not owned or leased by the licensee, using water for any purpose other than spraying fruit or washing stalls if the licensee does not pay for water, using recording devices without the market manager's permission, and cutting firewood. Ga. Comp. R. & Regs. rr. 40-9-2-.03; 40-9-2-.05.

and their friends' cars at the sheds, because the water, which was not paid for by the renters individually, was supposed to be used only for washing and keeping the produce fresh. She asked them many times to stop cutting firewood behind their stall because it was damaging the pavement, and to stack the wood within ten feet of their shed because it was impeding traffic. They told her to put it in writing, and after she did so, they moved the wood but did not clean up the mess. She asked them numerous times to turn their radio down, which sometimes they did and sometimes they did not. She asked them to remove their trash, which they had been dumping into a pickup truck that remained parked by their shed, which they did not clear out for two weeks.

An agricultural inspector at the Columbus Farmers' Market testified that when he came in at 6:00 a.m., he had more than once found the water running from behind Brown's rental shed. He said that Brown employees would park their vehicle 75 feet from their shed and turn up the radio so they could hear it. The open sheds acted as a tunnel and magnified the sound all over the market, and while they would turn it down when asked, they would subsequently turn it back up later. A produce vendor from an adjacent stall testified that Brown employees played loud music all summer, and when he asked them to stop, they told him to mind his own business. He explained that, when the market manager asked them to turn the music down, they would, but they turned it back up the next day. He saw them putting their trash in other people's dumpsters, and his customers complained that Brown employees were rude to them.

A customer of the market for 23 years testified that the Browns' radio was so loud, with a group of people around it, conversing above the noise of the radio, that he had to raise his voice to be heard by the vendors. He talked to another vendor, then to the market manager, then to someone in the agricultural department in Atlanta to complain that the loud radio turned him away from shopping at the market. He also made a complaint in writing, because he wanted to keep shopping there, but not with that type of noise.

This evidence is sufficient to support the agency's factual findings, particularly in light of the proper standard of review, which is to determine whether any evidence supports the agency decision. Accordingly, the trial court erred in reweighing the evidence and finding it lacking.

*Judgment reversed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 29, 2004.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, John E. Hennelly, Timothy J. Ritzka, Marc Goncher, Assistant Attorneys General,* for appellant.

Tommie Brown, *pro se.*