**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A1970. WELCKER v. GEORGIA BOARD OF EXAMINERS
      OF PSYCHOLOGISTS.

McMILLIAN, Judge.

In 2014, the Georgia Board of Examiners of Psychologists (the "Board") denied Joy Welcker's application for licensure and her subsequent request for a waiver because she graduated from an on-line school that had no physical presence and therefore she did not and could not meet the Board's requirement that the applicant reside full-time at the school for at least one year. See Ga. Comp. R. & Regs., r. 510-2-.04 (4). Welcker appeals the trial court's order affirming the Board's rulings, and we affirm for the reasons set forth below.

Under Georgia law, the Board has "the authority to refuse to grant or renew a license" to practice psychology in this State. OCGA § 43-1-19 (a). Refusal to grant

a license is authorized, inter alia, where an applicant "[fails] to demonstrate the qualifications or standards for a license . . . under the laws, rules, or regulations under which licensure is sought[.]" OCGA § 43-1-19 (a) (1). In seeking a license, the applicant has the burden "to demonstrate to the satisfaction of the board that [she met] all the requirements for the issuance of a license[.]" Id. But "if the board is not satisfied as to the applicant's qualifications, it may deny a license without a prior hearing; provided, however, that the applicant shall be allowed to appear before the board if he or she so desires[.]" Id.

Here, the Board denied Welcker's application by letter, without a hearing, on the ground that she failed to meet the residency requirement. The letter informed Welcker that she could request an applicant interview with the Board regarding the denial of her license, and after Welcker did so, an interview was scheduled for July 25, 2014.

In the interim, however, on July 22, 2014, Welcker filed a petition for waiver[1] of the residency requirement. The Board has the authority

---

[1] "'Waiver' means a decision by an agency not to apply all or part of a rule to a person who is subject to the rule." OCGA § 50-13-9.1 (b) (3).

to grant a . . . waiver to a rule *when a person subject to that rule demonstrates* that the purpose of the underlying statute upon which the rule is based can be or has been achieved by other specific means which are agreeable to the person seeking the variance or waiver and that strict application of the rule would create a substantial hardship to such person.

(Emphasis supplied.) OCGA § 50-13-9.1 (c). Therefore, Welcker also bore the burden of demonstrating that she was entitled to a waiver. Although the Board is not required to hold a hearing before issuing its denial of a waiver, OCGA § 50-13-9.1 (c) & (e), Welcker was entitled to make an appearance before the Board regarding her waiver request, OCGA § 43-1-19 (j), and the record indicates that the Board's Executive Director scheduled a date in August 2014 for Welcker "to appear before the Board again." The Board denied Welcker's petition for waiver on September 3, 2014.

Welcker filed a timely petition for judicial review of the Board's rulings. Following a hearing, the trial court held that the denial of her application for a license was not subject to judicial review because it was not a "contested case" within the meaning of the Administrative Procedure Act (the "Act"). However, the trial court found that the Board's denial of Welcker's petition for waiver *was* subject to judicial review, and it affirmed that decision. This appeal followed.

1. Our Supreme Court has explained the procedure to be followed in reviewing an agency's decision, noting that

> judicial review of an administrative decision is a two-step process: . . . the court must first determine if there is evidence to support the factual findings; the court then is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence.

(Citation and punctuation omitted.) *Handel v. Powell*, 284 Ga. 550, 552 (670 SE2d 62) (2008). In conducting this analysis, "[n]either our review nor the trial court's review of the [agency's] decision is de novo. They are reviews made with deference to the factual findings of the agency." (Citation and punctuation omitted.) *Excelsior Electric Membership Corp. v. Ga. Pub. Svc. Comm.*, 322 Ga. App. 687, 690 (745 SE2d 870) (2013). Additionally, "[w]hen an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation . . . of rules and regulations it has enacted to fulfill the function given it by the legislative branch." *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 159 (664 SE2d 223) (2008); *The Atlanta Journal & Constitution v. Babush*, 257 Ga. 790, 792 (364 SE2d 560) (1988) ("in construing administrative rules, the ultimate criterion is the administrative interpretation, which becomes of controlling weight

4

unless it is plainly erroneous or inconsistent with the rule'") (citation and punctuation omitted). "However, both the superior court and this court review conclusions of law de novo." (Citation and punctuation omitted.) *Ga. Dept. of Agriculture v. Brown*, 270 Ga. App. 646, 649 (2) (607 SE2d 259) (2004).

On appeal, Welcker enumerates error by the trial court in reviewing the Board's rulings in her case. However, "[w]hen this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Ga. Professional Standards Comm. v. James*, 327 Ga. App. 810, 811 (761 SE2d 366) (2014).

With respect to the decision of the administrative agency, a court may reverse or modify the Board's decision where substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> (1) [i]n violation of constitutional or statutory provisions; (2) [i]n excess of the statutory authority of the agency; (3) [m]ade upon unlawful procedure; (4) [a]ffected by other error of law; (5) [c]learly erroneous in

view of the . . . record; or (6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13-19 (h). See also *The Lamar Co. LLC v. Whiteway Neon-Ad*, 303 Ga. App. 495, 498 (693 SE2d 848) (2010).

Welcker argues on appeal that the Board's rulings were arbitrary and capricious, characterized by an abuse of discretion or clearly unwarranted exercise of discretion, and affected by other error of law. OCGA § 50-13-19 (h) (4) & (6). If a party alleges that an agency's ruling was arbitrary and capricious, the courts "must determine whether a rational basis exists for the final administrative decision made. This is a question of law." (Citation and punctuation omitted.) *Burke County v. Askin*, 327 Ga. App. 116, 120 (3) (755 SE2d 602) (2014). Further, under the abuse of discretion standard, "we review . . . legal holdings de novo, and we uphold . . . factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." (Citation and punctuation omitted.) *Murray v. Murray*, 299 Ga. 703, 705 (791 SE2d 816) (2016).

2. Welcker first asserts that the trial court erred in failing to review the denial of her license in addition to the denial of her petition for waiver. We disagree.

The general provisions regarding judicial review of an agency decision state that "[a]ny person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision *in a contested case* is entitled to judicial review under this chapter." (Emphasis supplied.) OCGA § 50-13-19 (a). "'Contested case' means a proceeding, including, but not restricted to, rate making, price fixing, and licensing, in which the legal rights, duties, or privileges of a party *are required by law* to be determined by an agency after an opportunity for hearing." (Emphasis supplied.) OCGA § 50-13-2 (2). Thus, a contested case arises only when the law mandates that the applicant be provided the opportunity for a hearing.

Neither the Board's decision to deny Welcker a license nor their denial of her petition for waiver can be considered a contested case. Georgia law allows the denial of a license without a hearing where an applicant fails to show that she has met all the qualifications for that license. OCGA § 43-1-19 (a). Therefore, because no hearing was required by law before the denial of Welcker's license, the Board's denial of Welcker's license application does not present a contested case subject to judicial review.

The Board's decision to deny a petition for waiver also cannot be considered a contested case. OCGA § 43-1-19 (j) explicitly states that the "refusal to issue a

previously denied license" shall not be considered a contested case under the Administrative Procedure Act and "notice and hearing with the meaning of the [Act] shall not be required"; however, the applicant "shall be allowed to appear before the board if he or she so requests." Nevertheless, such rulings are expressly made subject to judicial review under OCGA § 50-13-9.1 (f), which provides that "[t]he agency's decision to deny a petition for variance or waiver shall be subject to judicial review in accordance with Code Section 50-13-19."[2]

Reading the applicable statutes together, therefore, we find that the trial court properly denied judicial review of the denial of Welcker's license application and correctly limited its review to issues related to the Board's denial of the request for a waiver. We will likewise confine our review on appeal to the denial of the waiver request.

3. The Board denied Welcker's petition for waiver on two grounds: (1) her failure to meet the appropriate residency requirements "as per the Board rules in

---

[2] Therefore, we find no merit to Welcker's argument that the Board's decision must be reversed because it failed to maintain a record of the proceedings, which she asserts was required under OCGA § 50-13-13 (a) (8), because that provision applies only in contested cases.

8

effect in 2007" and (2) her failure to prove a substantial hardship resulting from strict application of the rule.

(a) *Residency requirement* – Welcker began her graduate studies in psychology through Fielding Graduate University ("Fielding") in 2007. Fielding is an on-line university accredited through the American Psychological Association (the "APA").[3] Welcker obtained her M. A. in psychology through Fielding in 2009 and was awarded her doctorate by the university on August 28, 2013.

As of 2004 and at the time Welcker began her graduate work in 2007, the Board's educational criteria to qualify for licensing included the following residency requirement:

> **Time Requirements for Training**. The Licensure requirements are consistent with the APA Accreditation requirements in that applicants for licensure should be able to demonstrate three full-time academic years of graduate study (or the equivalent) and the completion of an internship prior to the attainment of the doctoral degree. Two of the three academic training years must be fulfilled at the doctoral degree granting institution and *one year must be matriculated in full-time residence* at that same institution.

---

[3] The APA accreditation document describes the program as employing the modality of "Distance Education."

(Emphasis supplied.) former Ga. Comp. R. & Regs., r. 510-2-.04 (4) (2004) (the

"2004 rule"). In addition to other changes not pertinent here, the Board amended that

provision in 2010 to insert the word "continuous" before the phrase "full-time

residence"[4] and to add the following definition of residency:

> Residency means continuous physical presence, *in person*, at the
> educational institution in a manner that facilitates acculturation in the
> profession, the full participation and integration of the individual in the
> educational and training experience, and includes faculty student
> interaction. *Models that use face-to-face contact for shorter durations*

---

[4] Therefore, as of the date of Welcker's application for licensure in June 2013, section (4) of the rule read as follows, with the addition of the language in subsection (a) quoted above:

> **Time Requirements for Training**. The Licensure requirements are
> consistent with the APA Accreditation requirements in that applicants
> for licensure should be able to demonstrate three full-time academic
> years of graduate study and additionally the completion of an internship
> prior to the attainment of the doctoral degree. Two of the three academic
> training years must be fulfilled at the doctoral degree granting institution
> and one year must be matriculated in continuous full-time residence at
> that same institution.

former Ga. Comp. R. & Regs., r. 510-2-.04 (4) (2010). The rule was amended again on August 30, 2015.

*throughout a year or models that use video teleconferencing or other*
*electronic means to meet the residency requirement are not acceptable.*

(Emphasis supplied.) Ga. Comp. R. & Regs., r. 510-2-.04 (4) (a) (2010) (the "2010 amendment"). Therefore, the amendment was implemented between the time Welcker began her graduate work in 2007 and the time she earned her doctorate.

Welcker conceded at the hearing in this matter that Fielding does not provide the opportunity to attend classes in person on a physical campus.[5] Thus, no dispute exists that Welcker could not meet the 2010 residency requirements; however, she contends that her record meets the requirements under the 2004 rule. Welcker asserted in her petition for waiver that she had "accumulated 1,110 face-to-face *residency* hours with the program's faculty members" by attending, inter alia, orientation, national sessions, clinical sessions, and cluster meetings with faculty and other students, which she asserted met the purposes of the residency requirement. (Emphasis in original.)

---

[5] However, in her original application for a license, Welcker was asked to "indicate the dates [she was] *physically, in person, attending classes* at the graduate intuition [sic] *that granted [her] doctorate degree*," and Welcker represented that she had attended classes in Santa Barbara, California and Atlanta, Georgia from March 2007 to June 2013 (emphasis in original). We note that OCGA § 43-1-19 (a) (2) provides that the Board may refuse a license if an applicant "intentionally made any false statement in obtaining a license to practice the licensed business or profession."

11

Welcker contends that the Board's conclusion that these hours did not meet the residency requirement is based on the improper retroactive application of the 2010 amendment. The Board counters, however, that the 2010 amendment did not alter the 2004 rule but instead merely clarified it. They assert that the requirement of one-year's "full-time residence" at the degree-granting institution always meant continuous, in-person physical residence.

"In construing agency regulations, we employ the basic rules of statutory construction and look to the plain language of the regulation to determine its meaning." *Upper Chattahoochee Riverkeeper, Inc. v. Forsyth County*, 318 Ga. App. 499, 502 (1) (734 SE2d 242) (2012). Turning to the language of the 2004 rule, which did not yet contain a statutory definition of "residence," we note that Merriam-Webster defines the term "full-time" as "working the full number of hours considered normal or standard," "devoting one's full attention and energies to something," and "requiring all of or a large amount of your time."[6] The term "residence" is defined as "the act or fact of dwelling in a place for some time," "the act or fact of living or regularly staying at or in some place for the discharge of a duty or the enjoyment of

---

[6] https://www.merriam-webster.com/dictionary/full-time

a benefit," and "a period of active and especially full-time study, research, or teaching at a college or university."[7] Therefore, the plain meaning of the phrase "full-time residence" reasonably encompasses the concepts of both continuous and in-person physical residence. Because the Board's construction of the 2004 rule is not plainly erroneous, we must defer to their interpretation. See *Babush*, 257 Ga. at 792 (2). Accordingly, we find that the 2010 amendment did not change the residency requirement and thus that the evidence of record supports the Board's conclusion that Welcker failed to comply with the requirement as it existed in 2007.[8]

Nevertheless, Welcker disputes that the Board ever followed this interpretation of the 2004 rule before the 2010 amendment and asserts that the Board granted licenses to Fielding graduates between the passage of that rule and the amendment.

---

[7] https://www.merriam-webster.com/dictionary/residence

[8] Welcker argues that language in the first sentence of the rule stating that Georgia's "Licensure requirements are consistent with the APA Accreditation requirements" somehow indicates that the APA-accredited Fielding program met the Board's residency requirements. Ga. Comp. R. & Regs. r. 510-2-.04 (4) (a) (2004). However, that the APA licensure requirements are generally consistent does not mean that they are identical to Georgia's requirements. The 2004 Georgia residency requirement is different on its face from the APA requirements cited by Welcker, as the APA rule requires merely one year of "full-time residence *(or the equivalent thereof)*," (emphasis added) whereas the Georgia rule required "full-time residence" with no reference to equivalent substitutes.

13

Welcker points us to no evidence she introduced on this issue; thus, the record contains no evidence that any Fielding graduates who, like Welcker, began their studies after the institution of the residency requirement in 2004 have been granted a license or a waiver. However, the Board conceded in the trial court that it had granted waivers to one or two Fielding graduates who had begun their studies before the institution of the 2004 rule, in essence grandfathering them into the licensing requirement.

It is well settled that "'[a]n individual does not have a constitutional right to practice a health care profession since such a right is subordinate to the state's right to regulate such a profession." *Brown v. State Bd. of Examiners of Psychologists*, 190 Ga. App. 311, 312 (1) (378 SE2d 718) (1989). Thus, this Court has previously held "there is no requirement that the state 'grandfather' in everyone who does not meet a new rule's requirements." (Punctuation omitted.) Id. at 313 (1). Moreover, Welcker's situation is different from those applicants who were granted waivers because they began their studies before 2004, when Georgia apparently put into place

its residency requirement, because the Fielding program did not qualify for licensure at the time she began her studies.[9]

Accordingly, we find that the Board had a rational basis for its decision in Welcker's case and did not abuse its discretion in denying her request for a waiver on this ground.

(b) *Substantial hardship* – Welcker also contends that the Board erred in finding that strict application of the rule would create no substantial hardship on her. She notes that she incurred substantial debt in pursuing her education, she has deep ties in Georgia, and her professional development would be hindered without a license, which she contends is sufficient to entitle her to a waiver.[10]

---

[9] Welcker argues that the Board should have been required to present evidence to show that she did not comply with the rule, including evidence that it denied admission to Fielding graduates based on the residency requirement between 2004 and the 2010 amendment. However, Welcker clearly bore the burden of proof to support her waiver petition. See OCGA § 50-13-9.1 (c). Moreover, it is questionable whether, without a court order, the Board could have provided the information Welcker cites as it is restricted by statute from providing applications, personal information submitted by applicants, and the deliberations of the board with respect to an application, except as provided in official board minutes. See OCGA § 43-1-2 (k) (1) and (3).

[10] Although Welcker asserts that the Board failed to produce any evidence to counter her claim of hardship, as noted above, Welcker, and not the Board had the burden to establish a substantial hardship within the meaning of the Act.

However, the term "substantial hardship" in this context "means a significant, unique, and demonstrable economic, technological, legal, or other type of hardship to the person requesting a variance or waiver which impairs the ability of the person *to continue* to function in the regulated practice or business." (Emphasis supplied.) OCGA § 50-13-9.1 (b) (1). The Board asserts that because Welcker has not received a license to practice psychology, she cannot establish that the denial of waiver would impair her ability to continue to function in that profession. Such an interpretation is supported by a plain reading of the verb "to continue,"[11] and we cannot ignore the plain language of the statute. See *Mahalo Investments III, LLC v. First Citizens Bank & Trust Co., Inc.*, 330 Ga. App. 737, 738 (769 SE2d 154) (2015). Therefore, the Board correctly found that Welcker failed to establish that she would suffer substantial hardship from the Board's refusal to grant her a waiver as that term is defined in the Act. See *Brown*, 190 Ga. App. at 313 (2) (Since an individual "does not enjoy a constitutional right to practice psychology, it stands to reason that he has no corresponding right to be exempt from complying with the licensing rules.").

---

[11] "To continue" means "to maintain without interruption a condition, course, or action." See https://www.merriam-webster.com/dictionary/continue.

16

Accordingly, because the Board had a rational basis for its ruling, the decision is supported by the evidence, and it was not affected by an error of law, the trial court properly found that the Board's decision must be affirmed.

*Judgment affirmed. Dillard, P. J., Branch, Mercier and Bethel, JJ., concur. Ellington, P. J., concurs in judgment only. Miller, P. J., McFadden, P. J., and Reese, J., dissent.*

A16A1970. WELCKER v. GEORGIA BOARD OF EXAMINERS
 OF PSYCHOLOGISTS.

MILLER, Presiding Judge, dissenting.

As of today, the under-served community of south Georgia will have one less

qualified psychologist to provide much-needed mental health services in this part of

the state because this Court is affirming the licensing Board's arbitrary and capricious

interpretation of its own rules. Given the Board's decision to grant waivers to other

similarly situated applicants, the decision in Welcker's case is unsustainable.

Therefore, I must respectfully dissent.

The Board's justification for denying Welcker a waiver rests on its erroneous

interpretation of the 2004 Rule. We are not required to give deference to the Board's

plainly erroneous interpretation. *Northeast Ga. Med. Center, Inc. v. Winder HMA,*

*Inc.*, 303 Ga. App. 50, 56-57 (2) (b) (693 SE2d 110) (2010).[1] The 2004 Rule in effect

---

[1] In 2010, the Board specifically defined the term "residency" and thus we need not look to other sources to define it. Moreover, the dictionary's general definition of residency is not equivalent to the Board's specific definition of residency as continuous, physical, in-person presence. Therefore, the dictionary definition does not control our analysis of the meaning of "residency" in the 2004 Rule.

when Welcker began her studies did not expressly include the in-person physical presence requirement contained in the 2010 Rule. See Board Rule 510-2-.04 (4) (2004) ("the 2004 Rule").

I would find that Welcker clearly met the residency requirements under the 2004 Rule, and the Board's admission that it gave waivers to other applicants is fatal to its claim that Welcker is not also entitled to a waiver. The record is devoid of evidence that Welcker's situation differs from those applicants' situations except that they entered the program prior to the enactment of the 2004 Rule.

An agency decision is deemed to be "arbitrary" or "capricious" under the Administrative Procedures Act when such a decision "lacks a rational basis." (Footnote omitted.) *Professional Standards Comm. v. Adams*, 306 Ga. App. 343, 346 (702 SE2d 675) (2010). Here, the Board's decision lacks any rational basis and does a disservice to the people of south Georgia. Therefore, I would vacate the Board's decision and remand for further proceedings.

I am authorized to state that Judge Reese joins in this dissent.

A16A1970. WELCKER v. GEORGIA BOARD OF EXAMINERS

OF PSYCHOLOGISTS.

MCFADDEN, Presiding Judge, dissenting.

Dr. Welcker has made a prima facie showing of substantial hardship. So I would vacate the superior court's order and direct the superior court to remand to the agency to determine whether that showing can be rebutted or is outweighed by other considerations. Accordingly, I dissent.

"[A]n agency is authorized to grant a variance or waiver to a rule when a person subject to that rule demonstrates that the purpose of the underlying statute upon which the rule is based can be or has been achieved by other specific means which are agreeable to the person seeking the variance or waiver and that strict application of the rule would create a substantial hardship to such person." OCGA § § 50-13-9.1 (c).

In its letter denying the petition for waiver or variance the agency gave the following reasons:

- Failure to prove a significant, unique and demonstrable economic, technological, legal, or other type hardship (sic)

that strict application of the rule would create a substantial hardship to you.

- There is not an appropriate residency requirement met.as (sic) per Board Rules in effect (sic) 2007.

The reasons were set out in the agency's letter as I set them out here, as a pair of bullet points. Those reasons are ambiguous about whether they are each independently sufficient or sufficient only in combination. So unless we determine that both reasons are sustainable, we must remand.

And the second reason is plainly unsustainable. It begs the question that the petition put before the agency.

The first reason presents a closer question because we owe great deference to fact finders. But I would nevertheless vacate and remand.

To begin with, the reason contains another ambiguity. It contains language that Dr. Welcker failed to prove "a substantial hardship," but also that she failed to prove any "other type [of] hardship." So at a minimum we must remand to insure that the agency applies the "substantial hardship" standard. But I would find that the undisputed evidence makes a prima facie showing of substantial hardship and remand so that agency can determine whether that showing is overcome by other considerations.

"'Substantial hardship' means a significant, unique, and demonstrable economic, technological, legal, or other type of hardship to the person requesting a variance or waiver which impairs the ability of the person to continue to function in the regulated practice or business." OCGA § 50-13-9.1 (b) (1).

Chapter 13 of Title 50 is the Georgia Administrative Procedure Act. That Act "is not intended [to] create or diminish any substantive rights or delegated authority, but … is meant to provide a procedure for administrative determination and regulation where expressly authorized by law or otherwise required by the Constitution or a statute of this state." OCGA § 50-13-1. So it is written to cover a wide range of contexts. In the definition of "substantial hardship," the phrase "function in the regulated practice or business" is particularly broad. I cannot think of a more broadly inclusive word than "function." So Dr. Welcker's claim of substantial hardship is not rebutted by her ability, for the time being, to continue to practice under supervision. In some contexts, proper functioning entails growth and development. A professional practice is emphatically one such context.

I acknowledge that our almost unlimited deference is suggested by our case law; we have written that "the state may require additional requirements which would prohibit those already licensed from continuing to practice in the regulated field."

*Brown v. State Bd. of Examiners of Psychologists*, 190 Ga. App. 311, 313 (378 SE2d 718) (1989). But I question the soundness of that language in light of our Supreme Court's holding — in the context of liquor licenses — that,

> [c]onstitutional standards of due process do require that a governing body issuing licenses establish ascertainable standards by which an applicant can intelligently seek to qualify. The question before this court is whether this [rule] in question is drawn with sufficient specificity to apprise an applicant of common intelligence of the standards which he should anticipate the governing body will consider.

*Levendis v. Cobb County*, 242 Ga. 592, 594 (250 SE2d 460) (1978) (citation and punctuation omitted).

The undisputed evidence shows that Dr. Welcker, although licensed in South Carolina, has deep ties to the underserved south Georgia community in which she practices under supervision, that she has put forth a great deal of effort and incurred a great deal of debt with the goal of practicing psychology in that community. And it establishes that, before beginning her Ph.D. studies, she made an effort to ascertain the standards the agency would consider, which demonstrates her diligence and good faith.

Dr. Welcker's intention to seek licensure and conduct her practice in Georgia was a primary consideration in her decision which doctoral program to enter. So she undertook to narrow her list of potential schools to those whose doctoral programs would qualify her for licensure in Georgia. She contacted the office of the Secretary of State, which is charged with supervision of professional licensure. She learned that Georgia neither maintains nor adopts any list of accredited institutions. She was left instead to read and construe the applicable regulations. Those regulations, she learned, recited that they are "consistent with" the accreditation requirements of the American Psychological Association; and Fielding is accredited by that association. And so she applied to Fielding.

But she overlooked what has proved to be a crucial difference. While the associations's guidelines call for one year of "full time residence (or the equivalent thereof)," Georgia's regulations required a year of "full-time residence." As the majority notes, that regulation was amended in 2010, as Dr. Welcker was finishing her program, to make more clear Georgia's departure from the association's requirements.

5

I would hold that Dr. Welcker's unrebutted evidence makes a prima facie showing of substantial hardship. So I would remand for a determination whether that showing can be rebutted or is outweighed by other considerations.

I am authorized to state that Judge Reese joins in this dissent.