FOURTH DIVISION
DILLARD, P. J.,
RICKMAN and PIPKIN, JJ.

NOTICE: Motions for reconsideration must be physically received in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules-1-8/

October 12, 2023

# In the Court of Appeals of Georgia

A23A0862. SYMPHONY MEDICAL, LLC v. FFD GA HOLDINGS, LLC et al.

A23A0877. GA BIOSCIENCE RESEARCH, INC. v. GEORGIA ACCESS TO MEDICAL CANNABIS COMMISSION et al.

A23A0920. PURE PEACH ORGANIC, INC. v. FFD HOLDINGS LLC, et al.

A23A1017, A23A1018. CURALEAF GEORGIA HOLDINGS, LLC v. GEORGIA ACCESS TO MEDICAL CANNABIS COMMISSION et al.

A23A1091, A23A1092. ACC, LLC v. GEORGIA ACCESS TO MEDICAL CANNABIS COMMISSION et al.

PIPKIN, Judge.

Each of the Appellants in these seven discretionary appeals was an unsuccessful applicant for a license to produce cannabis and manufacture "low THC oil" in the State of Georgia, and these cases all involve the same question, namely, whether the Georgia Administrative Procedure Act ("APA" or "Act"), see OCGA § 50-13-1, et seq., provides a mechanism for judicial review of the licensing decision.

We consolidated these cases for the purposes of this appeal, and, as more fully explained below, we conclude that the APA does not apply under these circumstances; we also conclude, however, that some of these appeals are moot. Thus, we affirm in part and dismiss as moot in part.

1. To understand the circumstances of this appeal, a bit of background is necessary. In 2015, the Georgia General Assembly passed "Haleigh's Hope Act," which "permitted [certain] medical patients to possess and use low tetrahydrocannabinol (THC) oil of twenty fluid ounces or less." Allyson M. Clawson, Kady D. Litwer, *Crimes and Offenses*, 36 GA. ST. U. L. REV. 39, 41 (2019). See also Ga. L. 2015, p.__, § 1-1. In reality, though, these "patients had practically no legal way to gain access to the THC oil because it [remained] illegal to 'grow, buy, sell or transport the drug' in Georgia." (Citation and punctuation omitted.) *Clawson*, at 42. The General Assembly addressed this incongruity in 2019 with the passage of "Georgia's Hope Act," which, among other things, provides "for the production, manufacturing, and dispensing of low THC oil in this state," as well as "for the creation of the Georgia Access to Medical Cannabis Commission." See Ga. Law

2019, p.___, §§ 1, 2. The Hope Act as codified, see OCGA § 16-12-200, et seq.,[1] empowers the newly created Georgia Access to Medical Cannabis Commission ("GMCC") to issue Class 1 and Class 2 production licenses – six licenses in total[2] – which authorizes the licensee to "[g]row cannabis . . . in indoor facilities for the use of producing low THC oil" and to "manufacture low THC oil," OCGA §§ 16-12-211 (a), 212 (a) (2019). These production licenses are issued by the GMCC "pursuant to contracts awarded through competitive sealed bids or competitive sealed proposals." OCGA § 16-12-221 (a) (2019). This competitive process for the production licenses is where this matter begins.

In November 2020, the GMCC began the application process for both classes of production licenses with the release of the Competitive Application Request for Proposals. This "competitive sealed proposal process" was designed to identify and contract with sources to provide the needed goods or services for the production of low THC oil. The GMCC published application instructions that, among other things,

[1] The General Assembly has since revised and amended portions of the Hope Act effective July 1, 2021, see Ga. L. 2021, p. ___, §§ 2-24; however, because the relevant events occurred prior to that date, we rely on the statutes as enacted in 2019.

[2] The GMCC is authorized to issue two Class 1 licenses and four Class 2 licenses. OCGA §§ 16-12-211 (a), 212 (a). The differences between the two license classes is immaterial to these appeals, but the two classes generally differ with respect to certain financial requirements and the scope of production.

highlighted the metrics by which the applications would be evaluated, explained how the competitive proposals would be rated and scored and, further, advised applicants that production licenses would be awarded to the "most highly scored applicants at the conclusion of the evaluation process." The results of the evaluation would, according to the instructions, be announced by way of a "public posting of a Notice of Intent to Award," which "is not notice of an actual contract award[, but] instead, the NOIA is a notice of GMCC's expected contract award(s) pending resolution of the protest process."

Regarding the post-award protest, the application instructions reflect, in relevant part, that any such protest had to be brought in writing; that the protesting party was entitled to a hearing at which they could present oral argument; that the parties[3] had "the right to submit briefs, documents, and witness testimony in the form of affidavits" in advance of the hearing; that the parties had the right to have counsel present at their own expense; that the protesting party had the burden of showing "competitive prejudice," that is, "but for the [GMCC's] actions, the protesting party would have had a substantial chance of receiving an award"; and, finally, that the decision of the hearing officer was the final decision on the protest.

---

[3] The prevailing applicants were also entitled to participate in the protest proceedings.

Appellants GA Bioscience Research, Inc., Curaleaf GA Holdings, LLC, and ACC, LLC, each applied for both a Class 1 and Class 2 production license; Appellants Symphony Medical, LLC, and Pure Peach Organic, Inc., applied for only a Class 2 production license. Each Appellant, though, was listed on the relevant NOIA as an "apparent unsuccessful applicant[]" because their respective applications were "not [the] highest scoring." While the record before this Court is limited,[4] it is clear that each Appellant lodged a post-award protest and that, following legal argument before a hearing officer, their claims for relief were denied, leaving the GMCC free to issue the production licenses to the prevailing applicants. After their unsuccessful post-award protest, Appellants separately pursued relief in various superior courts; relying on the APA, each Appellant filed a petition seeking judicial review of the evaluation process and moved for a stay.[5] In each case, however, any stay was lifted and the petition was dismissed after the respective superior courts

---

[4] There is no administrative record before this Court in any case.

[5] Appellant Symphony Medical, LLC, filed in the Superior Court of McIntosh County; Appellant GA Bioscience Research, Inc., filed in the Superior Court of Tift County; Appellant Pure Peach Organic, Inc., filed in the Superior Court of Dougherty County; Appellant Curaleaf GA Holdings, LLC, filed in the Superior Court of Decatur County; and Appellant ACC, LLC, filed in the Superior Court of Murray County.

concluded that the APA did not offer an avenue for judicial review and, consequently, that there was no jurisdiction to entertain the matter. These appeals follow.

2. As a preliminary matter, the record reflects without contradiction that the GMCC has already issued all the available Class 1 production licenses. "In the present case[,] the license has been issued and the issuance of the license cannot be undone without revoking the license. The decision to revoke is entirely different from the decision to issue or not to issue a license."[6] *Board of Commrs. of Richmond County v. Cooper*, 259 Ga. 785, 785 (387 SE2d 138) (1990). Thus, at this juncture, our review of the selection process with respect to Class 1 licenses would prove meaningless. "A case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights. When the act that is the subject of the requested relief is completed, then the matter is moot and no longer subject to appeal." (Citations and punctuation omitted.) *Cardinale v. State*, 363 Ga. App. 873, 875 (1) (873 SE2d 256) (2022). Accordingly, we dismiss as moot the appeals in Case Numbers A23A1018 and A23A1092, and we dismiss the appeal in

---

[6] Compare OCGA § 16-12-221 (2019) (discussing the bidding process by which licenses may be granted) with OCGA § 16-12-223 (addressing revocation of production licenses).

6

Case Number A23A0877 to the extent that the appeal pertains to the Class 1 production licenses. See Id.; *Cooper*, 259 Ga. at 785.

3. We now turn to whether the APA authorizes judicial review of the Class 2 application process and applicant selection. We conclude that it does not.

To consider the issue presented in these appeals, we must delve into statute. In so doing, "we must afford the statutory text its 'plain and ordinary meaning,' we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (Citations omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). This Court "look[s] to the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it." (Punctuation omitted.) *Scott v. State*, 299 Ga. 568, 571 (2) (788 SE2d 468) (2016). See also OCGA § 1-3-1 (a), (b).

Where the statutory text is "clear and unambiguous," we attribute to the statute its plain meaning, and our search for statutory meaning generally ends. See *Deal v. Coleman*, 294 Ga. at 173 (1) (a). However, "when the language of a statute or regulation 'is not obvious on its face,' we should employ other 'tools of construction' to interpret it and resolve its meaning." (Citation and punctuation omitted.) *Premier*

*Health Care Investments, LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 39 (849 SE2d 441) (2020). The issue before us is purely legal and, thus, is reviewed de novo. See *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 689 (4) (681 SE2d 122) (2009).

Generally speaking, the APA is designed to "provide a procedure for administrative determination and regulation where expressly authorized by law or otherwise required by the Constitution or a statute of this state." OCGA § 50-13-1. Among other things, "the Act describes the procedures an agency must follow in order to adopt new rules and regulations, details the procedural rules and remedies relevant to agency proceedings, and provides for judicial review of both intermediate and final agency decisions." (Citations and punctuation omitted.) *Georgia Govt. Transparency and Campaign Finance Comm. v. New Ga. Project Action Fund*, 359 Ga. App. 32 (856 SE2d 733) (2021). Here, we presume without deciding – solely for the purposes of this opinion[7] – that the GMCC is generally subject to the strictures of the APA, and now turn to the judicial review provision of the Act to determine whether it applies in these cases.

---

[7] The GMCC, as a commission with rule-making authority, see OCGA § 16-12-210 (a) (11) (2019), seemingly falls within the definition of "agency" as defined in the APA, see OCGA § 50-13-2 (1), and is not obviously exempted from the Act, see id.; OCGA § 15-13-42. That said, references to the APA in other portions of the Hope Act call this conclusion into question; a concrete resolution of this ambiguity is best left to the General Assembly.

Under the APA, "[a]ny person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."[8] OCGA § 50-13-19 (a). Critical to our analysis is the term "contested case," which the APA defines as "a proceeding, including, but not restricted to, rate making, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." OCGA § 50-13-2 (2). Any party to a "contested case" is entitled to, among other things, the following: notice, the right to have subpoenas issued and enforced, to have counsel present, and to respond and present evidence. See generally OCGA § 50-13-13 (a). Further, the rules of evidence are generally applicable, and a party to the contested case is entitled to cross-examine witnesses and object to evidentiary offerings. See OCGA § 50-13-15 (1), (3). See also *DeKalb County School Dist. v. Georgia State Bd. of Ed,*, 294 Ga. 349, 370 (4) (a) (751 SE2d 827) (2013) (describing the procedural due process afforded under the

---

[8] Such judicial review may be accomplished "by filing a petition within 30 days after the service of the final decision of the agency or, if a rehearing is requested, within 30 days after the decision thereon" in the relevant superior court. See OCGA § 50-13-19 (b). There is no dispute that Appellants complied with this requirement.

9

APA). We have no trouble concluding that the post-award protest here – including the parties' respective "hearings" – is not a contested case under the APA.[9]

As an initial matter, the post-award proceedings do not have the procedural attributes of a contested case under the APA. The record before us reflects that the parties to the proceedings had a very limited opportunity to present evidence and were afforded a hearing at which they were permitted to present *legal* argument.[10] Further, there was no apparent opportunity to issue subpoenas, to cross-examine witnesses, or to object to evidentiary submissions, and there is no indication that the rules of evidence were followed, even as a general matter.

---

[9] The initial and amended prehearing orders that were issued in advance of the protest hearing both reference a code section of the APA, and Appellants assert that this was an "admission" by the GMCC that the post-award protest was controlled by the APA. However, even assuming that the hearing officer who issued these orders could be deemed a representative of the GMCC, the hearing officer's passing reference to OCGA § 50-13-13 is, at most, a vague legal opinion or conclusion that does not amount to an admission of *fact*. See, e.g., *Lott v. Hatcher*, 275 Ga. App. 424, 425 (620 SE2d 651) (2005) ("In other words, an admission in judicio applies only to the admission of fact and does not apply where the admission is merely the opinion or conclusion of the pleader as to law or fact.") (citation and punctuation omitted).

[10] Appellants contend that it was within the discretion of the hearing officer to receive evidence in written form. While it is true that the APA provides that a hearing officer may receive evidence in written form "when a hearing will be expedited and the interest of the parties will not be prejudiced," OCGA § 50-13-15 (1), there is no indication here that the decision to review evidence solely in written form was made by the *hearing officer* or that such a decision was reached with due consideration for any possible prejudice to the parties. Instead, the manner in which evidence would be submitted was included in the instruction application and, thus, made, at least in part, by the GMCC in advance of the evaluation process.

But, more to the point, the post-award protest differs from a contested case because the protest here is not designed to resolve which applicant is awarded a production license; instead, it merely offers the protestor the opportunity to demonstrate some error *on the part of the GMCC* in the evaluation and selection process. Indeed, the protestor need only show that, absent such error, "the protesting party would have had a *substantial chance* of receiving an award," and the relief to which that party would be entitled is only the "*revision or cancellation* of the notice of intent or *re-evaluation and re-award*." (Emphasis supplied.) In other words, the post-award proceedings do not adjudicate "the legal rights, duties, or privileges of a *party*," OCGA § 50-13-2 (2), as envisioned by the APA; in fact, absent a post-award protest, no such procedure is necessary to ultimately award the production licenses. As such, the judicial review provision of the APA has no applicability here. See *Dept. of Transp. v. White*, 367 Ga. App. 65, 68 (1) (885 SE2d 53) (2023) (party aggrieved by DOT permitting process not entitled to judicial review pursuant to the APA where there was no hearing or any proceeding with the attributes of a contested case); *Welcker v. Georgia Bd of Examiners of Psychologists*, 340 Ga. App. 853, 856 (2) (798 SE2d 368) (2017) ("[B]ecause no hearing was required by law before the denial

11

of [the applicant's] license, the Board's denial of [his] license application does not present a contested case subject to judicial review.").[11]

Our conclusion is bolstered when we look at the unique structure of the Hope Act as a whole. While the General Assembly has expressly authorized judicial review in accordance with the APA in at least two other parts of the Hope Act, see OCGA §§ 16-12- 222 (c) (2019), 223 (b) (2019),[12] that authorization is notably absent from OCGA § 16-12-221, which, as discussed above, speaks to the bidding process for the production licenses. As we have explained before,

> [u]nder the statutory interpretation doctrine of expressio unius est exclusio alterius, where the General Assembly includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the General Assembly acts intentionally and purposely in the disparate inclusion or exclusion.

(Citation and punctuation omitted.) *Truist v. Stark*, 359 Ga. App. 116, 119 (1) (854 SE2d 784) (2021). As such, we may conclude that the exclusion of the judicial review provision from OCGA § 16-12-221 was intentional and, thus, that even if the APA

---

[11] See also *Ardmare Const. Co. v. Freedman*, 191 Conn. 497, 503 (I) (A) (467 A2d 674) (1983) ("An agency decision to reject a bid or to award a contract has none of the attributes of a formal hearing, nor is a formal hearing required by law. For this reason, the agency's decision does not involve a contested case[.]").

[12] Effective July 1, 2021, the APA also applies to certain actions taken by the GMCC under OCGA § 16-12-203. See id at (17); Ga. L. 2021, p. ___, § 3.

is otherwise applicable to the Hope Act, the judicial review provision is inapplicable to the process by which the production licenses are awarded under OCGA § 16-12-221. See *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 72 (1) (456 SE2d 642) (1995) (express mention of "state officer or employee" in two subsections of statute and omission from third "regarded as deliberate").

Accordingly, the judicial review provision of the APA does not apply here, and the respective superior courts properly dismissed the various petitions for review filed by Appellants with respect to the Class 2 licenses.[13] *White*, 367 Ga. App. at 69 (1).

*Judgment affirmed in Case Nos. A23A0862, A23A0920, A23A1017, and A23A1091. Judgment affirmed in part and appeal dismissed in part in Case No. A23A0877. Appeal dismissed in Case Nos. A23A1018 and A23A1092. Dillard, P. J., and Rickman, J., concur.*

---

[13] Appellants do not argue that the superior court otherwise had jurisdiction to consider the petitions for judicial review.